# EXHIBIT B

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

FILED
1/15/2025 5:38 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2024L012201
Calendar, W
30995575

ACCESS GROUP f/k/a TKT )
SOLUTIONS, INC., )
      Plaintiff, )
  )
    v. )    Case No. 2024 L 012201
  )
TODD BYRD, COREY BRILL, and )    Judge Thomas More Donnelly
TICKET AVENUE CORP., )
  )
      Defendants. )

**DEFENDANTS COREY BRILL'S AND TICKET AVENUE CORP.'S SECTION 2-615 &
2-619 MOTION TO DISMISS COUNTS II AND IV OF PLAINTIFF'S COMPLAINT**

NOW COME Defendants Corey Brill and Ticket Avenue Corp. ("Ticket Avenue") (collectively, "Defendants"), by their undersigned attorney, and hereby move the Court pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619 to dismiss Counts II and IV of Access Group f/k/a TKT Solutions, Inc.'s ("Access Group" or "Plaintiff") Complaint in the above-captioned matter:

## I.    INTRODUCTION

Access Group's Complaint fails to adequately plead either of its causes of action against Defendants, meriting dismissal. As to Access Group's claim against Defendants for violation of the Illinois Trade Secrets Act (the "ITSA"), Access Group fails to properly plead any of the elements of this cause of action. Specifically, the vague pleadings of Count II fail to allege (1) the existence of a protectable trade secret; (2) that Defendants misappropriated those trade secrets; and (3) that Defendants used any of Access Group's trade secrets in their business.

And regarding Access Group's second cause of action against Defendants (Count IV), *i.e.*, for tortious interference with contract, Access Group failed to adequately plead (1) the existence of a contract between Todd Byrd and Access Group that contained a valid and enforceable non-

18349372.1

compete provision; (2) that Defendants were aware of such contract; (3) Defendants intentionally and unjustifiably induced Byrd to breach the contract; and (4) any facts supporting the allegation that Access Group has suffered damages as a result of any conduct by Defendants or Byrd.

Any one of these failures require dismissal of the Complaint, as drafted; taken together, it cannot be doubted that dismissal is warranted. Defendants respectfully submit that both causes of action against them should be dismissed pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619.

## II.    FACTUAL BACKGROUND

Ticket Avenue is an online ticketing platform owned by Corey Brill that has operated in the secondary ticket market since its founding in 2015. Complaint at ¶ 58. Ticket Avenue is a company with a passion for live entertainment and a dedication to providing seamless ticketing experiences that has become a trusted destination for fans, event organizers, and performers. On September 16, 2024, Ticket Avenue hired Byrd. Previously, Byrd worked at Access Group from January 2022 until August 2024, subject to an alleged non-compete agreement. *Id*. ¶ 3.

On October 30, 2024, Access Group initiated this litigation against Defendants and Byrd alleging breach of contract (Count I) and breach of fiduciary duty (Count III) against Byrd, violation of the ITSA (Count II) against Defendants and Byrd, and tortious interference (Count IV) against Defendants. Regarding the ITSA, the Complaint claims Byrd "misappropriated a significant volume of Access Group's confidential information and trade secrets" (*id*. ¶ 5), but fails to identify what the trade secrets were. The Complaint is also devoid of allegations regarding *Defendants'* misappropriation, as opposed to Byrd, or use of those trade secrets in their business.

Regarding the tortious interference with contract claim, the Complaint likewise fails to properly plead all the required elements. First, although the Complaint asserts the existence of an employment agreement (the "Agreement") between Access Group and Byrd (*id*. ¶ 35), the

2

18349372.1

operative non-compete provisions of the Agreement are unenforceable under Illinois law.  Second, Access Group pleads no information demonstrating that Defendants both knew of the Agreement and intentionally induced Byrd to breach it.  A bare allegation that "Brill and Ticket Avenue knew about the Agreement" (*id*. ¶ 92) does not adequately plead those elements in a fact-pleading jurisdiction such as Illinois.  Last, Access Group's damages allegation contains no supporting detail as to the nature of the injury caused by Defendants (*id*. ¶ 96).

## III.    LEGAL STANDARD

Illinois is a fact-pleading state; conclusions of law and conclusory allegations unsupported by specific facts are not sufficient to survive dismissal.  *United City of Yorkville v. Fid. And Deposit Co. of Maryland*, 2019 IL App (2d) 180230, ¶ 126.  Deficiencies in a complaint caused by the failure to allege facts are not cured by provisions in the Illinois Code of Civil Procedure concerning liberal construction.  *Boylan v. Martindale*, 103 Ill. App. 3d 335, 347 (2nd Dist. 1982).  "A pleading which merely paraphrases the law, 'as though . . . to say that (the pleader's) case will meet the legal requirements, without stating the facts,' is insufficient."  *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 427 (1981).

Section 2-619.1 of the Illinois Code of Civil Procedure allows a movant to combine a motion with respect to sufficiency of pleadings under Section 2-615 with a motion for involuntary dismissal under Section 2-619.  735 ILCS 5/2-619.1.  A Section 2-615 motion to dismiss attacks the legal sufficiency of a complaint by pointing out defects on the face of the complaint which require dismissal.  735 ILCS 5/2-615; *Yoon Ja Kim v. James Jh Song*, 2016 IL App (1st) 150614-B, ¶ 41.  Although all well pleaded facts are taken as true, legal conclusions unsupported by alleged

3

facts must be disregarded. *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274 ¶ 29.[1]

Conversely, a motion for involuntary dismissal under section 2-619 asserts that an affirmative matter outside the complaint bars or defeats the cause of action. *Reynolds*, at ¶¶ 30–33; 735 ILCS 5/2-619(a)(9). Section 2-619(a)(9)'s purpose is to provide litigants with a method of disposing of issues of law and easily proved issues of fact relating to an "affirmative matter" early in the litigation. *Van Meter v. Darien Park District,* 207 Ill. 2d 359, 367 (2003).

## IV.    ARGUMENT

### A.    The ITSA Claim (Count II) Must be Dismissed Under § 2-615 Because Plaintiff Does Not Properly Allege the Misappropriation of a Protectable Trade Secret.

To state a claim under the ITSA, a plaintiff must allege facts that the allegedly confidential information at issue was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business. *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 740 (1st Dist. 2009).

#### i.    Plaintiff Fails to Allege a Protectible Trade Secret.

The ITSA defines a trade secret as:

Information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

Therefore, a party claiming trade secret protection must plead and prove that the information at issue was known only to it and such limited persons within the company to whom

---

[1] The court determines whether the pleadings sufficiently set forth every essential fact to be proven. *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 555 (1st Dist. 1995). In so doing, the court only considers (1) facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Exhibits attached to the complaint may also be considered. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 321 (2008).

18349372.1

it may be necessary to confide the information. *System Dev. Svcs., Inc. v. Haarmann*, 389 Ill. App. 3d 561, 572 (5th Dist. 2009). The party must likewise show that the "real value of the information lies in the fact that it is not generally known to others who could benefit from using it." *Id.* "It is well established that a product or service that is within the realm of general skills and knowledge in the industry cannot be a trade secret." *Id.* Illinois and federal courts further agree that, for a company claiming trade secret protection under the ITSA, "'[i]t is not enough to point to broad areas of technology [or other information] and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets.'" *Nat'l Tractor Parts, Inc. v. Caterpillar Logistics Inc.*, 2020 IL App (2d) 181056, ¶ 48; accord *Alpha School Bus*, 391 Ill. App. 3d at 735; *Segerdahl v. Ferruzza*, No. 17-c-3015, 2018 WL 828062, at *3 (N.D. Ill. Feb. 10, 2018) (granting dismissal where alleged trade secrets were "too broadly defined"); *Carpenter*, 2011 WL 1297733, at *3 (similar); *Thermal Zone*, 1993 WL 358148 at *5 (similar).

Access Group's Complaint does not define the term "trade secret," nor does it name any specific information in its possession that would constitute a trade secret. Rather, it simply asserts that trade secrets exist. In fact, Access Group appears to deliberately avoid identifying what is at issue by placing a black box around the trade secrets and keeping Defendants and the Court in the dark as to what it claims was misappropriated. *Segerdahl*, 2018 WL 828062, at *3; *Chatterplug, Inc. v. Digital Intent, LLC*, No. 1:16-cv-4056, 2016 WL 6395409, at *3 (N.D. Ill. Oct. 28, 2016) (dismissing allegations of trade secret misappropriation for lack of specificity); *Carpenter v. Aspen Search Advisers*, LLC, 2011 WL 1297733, *3 (N.D. Ill. Apr. 5, 2011) (same); *Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd.*, 93-c-0556, 1993 WL 358148, at *5–6 (N.D. Ill. Sept. 14, 1993).

Access Group also makes no attempt to separate what is in the public domain from that which may not be publicly known. Courts recognize and reject this classic plaintiff's technique to

18349372.1

*hide the ball until discovery*, where whatever is found in a defendant's files suddenly becomes the "trade secret." "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, No. No. C 13–04519 WHA, 2014 WL 1724763, at *2 (N.D. Cal. May 1, 2014). Meanwhile, "[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Id.*

Access Group's Complaint demonstrates that it cannot even clear the first hurdle in properly pleading an ITSA claim: specifying what information within Defendants' custody or control constitutes trade secrets belonging to Access Group. Although Access Group pleads very broad areas of information generally within its possession that could conceivably include trade secrets (*e.g.*, "proprietary software and analytical tools" used for "pricing information and analysis, including based on proprietary algorithms, calculations, and projections" (Complaint at ¶ 24)),[2] it wholly fails to allege any specific documents or pieces of information that would constitute Access Group's trade secrets. This is insufficient under the ITSA.

*Segerdahl Corp. v. Ferruzza* is particularly instructive here. That case involved a company, The Segerdahl Corp. d/b/a SG360 ("Segerdahl"), suing a former employee for violation of the ITSA. More specifically, Segerdahl alleged that its former Director of Infrastructure and Networking, Vince Dante, used his position and access to Segerdahl employee credentials to gain access to email accounts of its CEO and Chairman of the Board and former CEO and copy confidential information. 2018 WL 828062 at *1. Segerdahl further alleged that Dante copied the

---

[2] Other examples of vague allegations regarding alleged trade secrets in Access Group's possession include "extensive data on specific events and venues" (Complaint at ¶ 23) and "various methodologies, systems, and models for ticket acquisition" (*id*. at ¶ 25).

18349372.1

FILED DATE: 1/15/2025 5:38 PM    2024L012201

information into emails directed to his personal email account, and that he dismantled a Segerdahl-owned laptop and removed the internal hard drive to remove information from the computer. *Id.* Dante moved to dismiss for failure to state a claim on the basis that Segerdahl did not "specifically identif[y] the trade secrets at issue and the complaint lack[ed] allegations that the trade secrets [were] used in commerce or for the defendant's business." *Id.* at *2.

The court agreed with Dante, dismissing the ITSA claim. *Id.* at *3. In particular, the court noted that Segerdahl's complaint only identified "broad areas of technology" of confidential information that Dante purportedly misappropriated. *Id.* The court further noted that "[a]lthough Segerdahl makes more definite allegations of what constitutes trade secrets elsewhere in the complaint, none of those allegations relate to the alleged misappropriation by Dante." *Id.*[3]

The present case is much like *Segerdahl*—although the Complaint references alleged confidential information in the form of "software and analytical tools that analyze pricing" and "ticket pricing information and analysis, including based on proprietary algorithms, calculations, and projections that enable Access Group to see and analyze market trends," such allegations are insufficiently particular to withstand dismissal under the standards set forth above. Further, Access Group fails to connect any specific trade secret information to Byrd's alleged misappropriation. *Id*. at ¶ 47. The Complaint instead begs the Court to make the logical leap that, because Byrd "had access" and "had the ability to know" Access Group's allegedly confidential information by virtue

---

[3] In ruling against Segerdahl, the court examined other ITSA cases and noted that pleadings were sufficient because the plaintiffs identified "specialized methods, design specifications, business plans, and product development plans" as well as "specific types of business information and proprietary information, including profit and loss information, internal costs and overhead, operational information . . . and specific bid and proposal information." *Id.* (internal citations omitted). Conversely, the *Segerdahl* court noted that other courts dismissed ITSA claims where "there were no specific allegations about the nature of the confidential data for which the party asserted trade secret protection." *Id.*

18349372.1

of his position within the company, he must certainly have misappropriated such information. *Id*. at ¶¶ 32–33. This undoubtedly falls well short of the standard set forth by Illinois courts.

Additionally, as to Defendants, Access Group's sole accusation of wrongdoing boils down to a claim that "on information and belief," Defendants are now "expanding their activity on those very platforms by utilizing Access Group's confidential information and trade secrets." *Id*. at ¶¶ 12, 63. At no point, however, does Access Group connect the dots and plead which of its "confidential information and trade secrets" Defendants used to achieve these aims. Such claims, at best, refer to broad categories of technology/information in Access Group's possession, but fail on their face to set forth what "concrete secrets" Defendants misappropriated and later used to promote their business. Furthermore, there is simply no factual or legal basis pleaded to support Plaintiff's assumption that any expansion of Ticket Avenue's business operations must be attributable to the misappropriation of Access Group's confidential information. Thus, because the Complaint is devoid of any allegation regarding what Access Group "trade secret(s)" Defendants have used, Access Group has failed to properly allege a claim under the ITSA.

## ii. Plaintiff Fails to Allege Any Misappropriation *by Defendants*.

Dismissal is also proper because Access Group's Complaint is devoid of any allegation of wrongdoing *by Defendants* in allegedly misappropriating the alleged trade secrets, as opposed to assertions of misappropriation solely *by Byrd*. Complaint at ¶¶ 47–49.

## iii. Plaintiff Fails to Properly Allege That Defendants Used Any Confidential Information in Defendants' Business.

To properly state its claim, Access Group must allege that Defendants used Access Group's allegedly misappropriated trade secrets in connection with Defendants' business. An allegation that Defendants *could* use Access Group's trade secrets or that Access Group *fears* Defendants will use its trade secrets is insufficient. *Teradyne, Inc. v. Clear Commc'ns Corp.*, 707 F. Supp.

8

18349372.1

353, 357 (N.D. Ill. 1989); *Woodard v. Harrison*, 8-2167, 2008 WL 4724370, at \*3 (C.D. Ill. Oct. 24, 2008).  Additionally, alleging that Defendants have merely *attempted* to use Access Group's trade secrets is also insufficient.  *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999); *Woodard*, 2008 WL 4724370, at \*3.  Here, Access Group alleges no facts supporting the conclusion that Defendants have actually used its supposed trade secrets.

Indeed, the entire relevant section of the Complaint—which was intended to focus on potential misconduct by Defendants, as opposed to by Byrd—has no allegations regarding how or when Defendants used Access Group's alleged trade secrets.  *See generally*, Complaint at ¶¶ 57–66.  Furthermore, the Complaint itself tacitly acknowledges that Defendants may not have used Access Group's alleged trade secrets by arguing that "the use or disclosure of Access Group's confidential information and trade secrets—*if not already used or disclosed*—is inevitable." Complaint at ¶ 16 (emphasis added).  Thus, although Access Group wishes the Court to believe Defendants' use of Access Group's alleged trade secrets is inevitable (a wholly separate allegation discussed below), the language of the Complaint concedes that Defendants may *not* have used Access Group's alleged trade secrets.

1) The Inevitable Disclosure Doctrine Cannot Save Access Group's Defective Pleadings.

Access Group similarly failed to show that use by Defendants is inevitable here.  Under the inevitable disclosure doctrine, "a plaintiff may bring a trade-secrets claim—even if the trade secret has not yet been used—if the defendant 'could not operate or function without relying on [plaintiff's] alleged trade secret.'"  *CDM Media USA, Inc. v. Simms*, 14-cv-9111, 2015 WL 1399050, at \*5 (N.D. Ill. Mar. 25, 2015) (quoting *Strata Mkt'g, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070 (1st Dist. 2000)).  Because this doctrine is essentially a judicially imposed non-compete, it is generally disfavored and comes with a heightened pleading standard.  *Magellan*, 76

9

18349372.1

F. Supp. 2d at 927; *Packaging Corp. of Am. v. Croner*, 419 F. Supp. 3d 1059,1070 (N.D. Ill. 2020).

It is reserved for particularly flagrant and extreme circumstances, such as when a plaintiff company metaphorically "finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game." *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995).

"To invoke this doctrine the complaint must do more than make conclusory allegations that the employees will necessarily use trade secrets in their new position." *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 819 (N.D. Ill. 2014). It is not enough to allege "'the mere fact that a person assumed a similar position at a competitor' to state a claim for inevitable disclosure." *Croner*, 419 F. Supp. 3d at 1070. And "even when a defendant is in possession of secret information, disclosure or use of that information is not inevitable." *Magellan*, 76 F. Supp. 2d at 927; accord *Stenstrom Petroleum Svcs. Grp. v. Mesch*, 375 Ill. App. 3d 1077, 1096 (2d Dist. 2007). Importantly, a plaintiff relying on an inevitable disclosure theory must plead and prove "*intent or a high probability*" that the employee *will* use the relevant trade secrets. *Croner*, 419 F. Supp. 3d at 1070 (emphasis added); *see also Fleetwood Packaging v. Hein*, 14 C 9670, 2014 WL 7146439, at *7 (N.D. Ill. Dec. 15, 2014) (plaintiff must show more than the possibility that defendants could misuse the trade secrets, it must show that the defendants will use the secrets).

Access Group's allegations do not come close to satisfying the inevitable disclosure doctrine. Although Access Group states in a conclusory fashion that Defendants' use of the alleged trade secrets is "inevitable," it provides no basis for this claim other than the fact that Access Group and Ticket Avenue operate within the same industry. Such allegations fall woefully short of the standard set by Illinois law for pleading inevitable use. Access Group certainly has not pleaded, and could never show, that Ticket Avenue "could not operate or function without relying on

10

18349372.1

plaintiff's alleged trade secret" given that Ticket Avenue has, in fact, been operating very successfully in the ticketing platform space without such information since its founding in 2015 (indeed, before Access Group was even founded in 2016). Under either a theory of actual use or inevitable use of alleged trade secrets, the Complaint falls well short of alleging the kind of specific facts required in a fact-pleading jurisdiction. Accordingly, Plaintiff's Complaint fails to properly state a claim for violation of the ITSA such that Count II of the Complaint must be dismissed as to Defendants.

### B. Plaintiff's Tortious Interference with Contract Claim (Count IV) Must Also Be Dismissed Pursuant to Both 735 ILCS 5/2-615 and 2-619.

To prevail on a claim of tortious interference with a contract, a plaintiff must plead and prove the following: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party, (2) that defendant was aware of the contract, (3) that defendant intentionally and unjustifiably induced a breach of the contract, (4) that the wrongful conduct of defendant caused a subsequent breach of the contract by the third party, and (5) that plaintiff was damaged as a result." *Bank Financial, FSB v. Brandwein*, 2015 IL App (1st) 143956, ¶ 43.

### i. Under § 2-619, Plaintiff Fails to Show the Existence of a Valid and Enforceable Non-Compete Agreement as A Matter of Law.

Although Access Group alleges the existence of an Agreement between Byrd and Access Group—that was allegedly breached when Byrd went to Ticket Avenue—Count IV should nonetheless be dismissed pursuant to Section 2-619(a)(9). This claim is defeated, as an affirmative matter, because the Agreement appears to be unenforceable and/or invalid under the Illinois Freedom to Work Act ("IFWA"). The IFWA provides that for restrictive covenants not to compete to be enforceable, employers must "provide[] the employee with a copy of the covenant at least 14 calendar days before the commencement of the employee's employment or the employer provides

11

the employee with at least 14 calendar days to review the covenant." 820 ILCS 90/20. This process was not followed. Instead, the Agreement was sent to Byrd on January 5, 2022 and signed that same day, after which his employment commenced on January 10. Because Access Group failed to advise Byrd of his 14 days to consider the Agreement and its restrictive covenants, the covenants are void as a matter of law.

Even setting aside the fourteen-day notice requirement, the restrictive covenants in the Agreement are overly stringent and therefore void under 820 ILCS 90/15. Specifically, under the IFWA, a covenant not to compete and solicit is illegal and void unless: (1) the employee receives adequate consideration, (2) the covenant is ancillary to a valid employment relationship, (3) *the covenant is no greater than is required for the protection of a legitimate business interest of the employer*, (4) the covenant does not impose undue hardship on the employee, and (5) the covenant is not injurious to the public. *Id.* (emphasis added).

> In determining the legitimate business interest of the employer, the totality of the facts and circumstances of the individual case shall be considered. Factors that may be considered in this analysis include, but are not limited to, the employee's exposure to the employer's customer relationships or other employees, the near-permanence of customer relationships, the employee's acquisition, use, or knowledge of confidential information through the employee's employment, the time restrictions, the place restrictions, and the scope of the activity restrictions.

820 ILCS 90/7. Furthermore, in Illinois, "an individual has a fundamental right to use his general knowledge and skills to pursue the occupation for which he is best suited." *George S. May Int'l Co. v. Int'l Profit Assocs.*, 256 Ill. App. 3d 779, 787 (1993).

As such, Illinois courts disfavor non-competes and non-solicitation as a restraint on trade and will only enforce them if they are reasonable. *See Reliable Fire Equip. Co. v. v. Arredondo*, 2011 IL 111871, ¶16. Illinois courts have found restrictive covenants to be unreasonable when the non-compete prohibited the employee from engaging "in any activity for or on behalf of

12

18349372.1

Employer's competitors, or engage in any business that competes with Employer" and/or imposed a one-year nationwide restriction on the employee becoming "associated with, through ownership, employment, self-employment, consultancy, contract or otherwise, any Competing Business." *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 443–52 (2007); *see also Montel Aetnastak v. Mieesen*, 998 F. Supp. 2d 694, 716–18 (N.D. Ill. 2014) (granting motion to dismiss where the court found the restrictive covenant to be unreasonable and unenforceable); *Axion RMS, Ltd. v. Booth*, 2019 IL App (1st) 180724, ¶ 24 (similar).  The unenforceability of a non-compete provision is adequate grounds to dismiss a legal claim based upon the provision.  *Id*.

The non-compete provision in the Agreement between Access Group and Byrd is closely akin to the employment agreements that Illinois courts have held to be unenforceable.  For example, the Agreement designates "the fifty States comprising the United States of America," as the "Territory" implicated by the restrictive covenant, and further states that Byrd will not "for a period of twenty-four months following [his] termination of employment . . . provide services to any business that is similar to, or competitive with, the [Access Group's] business or that of [Access Group's] clients."[4]

Given this language, it can be decided at the pleadings stage, as a matter of law, that the Agreement is not reasonable and not limited solely to the protection of Access Group's legitimate business interests.  Instead, it effectively prohibits Byrd from working in his field anywhere in the United States for a lengthy period of two years, which is sufficient to void the restrictive covenants

---

[4] Redacted and unredacted copies of the Agreement will be submitted to this Court as part of the motion to dismiss filed by Byrd in this matter, and they are also hereby incorporated by reference into this Motion. Incorporation of and reference to the Agreement is appropriate in this Motion to Dismiss.  "A court may…consider documents attached to a motion to dismiss where the plaintiff put their contents at issue but failed to attach them to the complaint."  *Eberhardt v. Village of Tinley Park*, 2024 IL App (1st) 230139, ¶ 18 (citing *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 134 (1st Dist. 1986)).  Here, Access Group has clearly put the Agreement at issue because its existence is essential to Access Group's tortious interference claim.

18349372.1

in the Agreement. *See Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l Inc.*, 616 F. Supp. 2d 805, 817 (N.D. Ill. 2009) (finding a non-compete agreement to be "too broad and far-reaching to be enforceable" where it applied broadly geographically such that the employee was effectively not able to engage in their profession). Thus, Access Group has failed to establish the existence of a valid and enforceable contract that would prohibit Byrd from working for Ticket Avenue, requiring dismissal of Count IV.[5]

### ii. Under § 2-615, Plaintiff Fails to Show Ticket Avenue's Awareness and Intentional Breach of the Agreement.

Even assuming *arguendo* that Count IV was predicated on a valid and enforceable non-compete provision (it is not), Access Group failed to plead any facts supporting its claim that Defendants meant to breach the Agreement. Access Group simply asserts "Brill and Ticket Avenue knew about the Agreement" (Complaint at ¶ 92). This, however, is the very definition of a legally insufficient conclusory statement. *See Law Offices of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 41 (upholding dismissal of tortious interference claim when "plaintiff failed to plead any facts in the first amended complaint to show that the…defendants had knowledge" of the relevant contract).

And—although Access Group alleges that Defendants "intentionally and unjustifiably induced Byrd to breach and threaten to breach the Agreement" (Complaint at ¶ 93)—it pleaded no facts supporting this bald-faced recitation of the third element of the tortious interference claim. *See Chejfec*, 2023 IL App (3d) at ¶ 40 (finding that a defendant's actions are only intentional "if the defendant, in committing those acts, either desired to bring about the harm to the plaintiff (the breach of the contract by the other party) or knew that such a result was substantially certain to be

---

[5] Beyond the arguments set forth by Defendants in this Section, Defendants incorporate by reference the arguments contained in the motion to dismiss to be filed contemporaneously on behalf of Byrd.

14

18349372.1

produced by those acts."); *Knox*, 88 Ill. 2d at 427 (insufficient for pleadings to merely recite the elements of the claim).  While Defendants sought to hire Byrd, nothing in the Complaint indicates Defendants intended to harm Access Group or for Byrd to violate any employment agreement with a prior employer, requiring dismissal of Count IV.

### iii.    Under § 2-615, Access Group Fails to Adequately Allege Damages.

Finally, Access Group has failed to plausibly allege that it suffered damages.  "Damages may not be predicated on mere speculation, hypothesis, conjecture or whim."  *Johnson v. John Marshall Law Sch.*, No. 1–12–3610, 2014 WL 4802989, at *11 (Ill. Ct. App. Sept. 26, 2014) (citing *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823 (2003)).  "Failure to state sufficient facts to constitute a legally cognizable present injury or damage mandates dismissal of the action."  *Yu v. Int'l Bus. Machs. Corp.*, 314 Ill. App. 3d 892, 897 (2000).  Here, Access Group provides no facts underpinning the claim that it has suffered damages or the nature or cause thereof.  Rather, Access Group merely asserts in conclusory fashion that "[a]s a result of Byrd's breaches and threatened breaches, Access Group has suffered and will suffer irreparable harm and damages."  Complaint at ¶ 74.  If this is not a failure to state facts constituting legally cognizable damages, nothing is.  Accordingly, Access Group's tortious interference claim fails on this basis as well.

## V.    CONCLUSION

WHEREFORE, Defendants pray that the Court grant their Section 2-615 and Section 2-619 motion to dismiss Counts II and IV of Plaintiff's Complaint, along with such other and further relief that the Court deems proper and just.

Dated:  January 15, 2025                          Respectfully submitted,

                                                  */s/ Christina T. Hassel*
                                                  One of the Attorneys for Defendants
                                                  Corey Brill and Ticket Avenue Corp.

18349372.1

FILED DATE: 1/15/2025 5:38 PM   2024L012201

Peter M. Katsaros
HAHN LOESER & PARKS, LLP #40867
200 W. Madison Street, Suite 2700
Chicago, IL 60606
Phone: (312) 637-3015
pkatsaros@hahnlaw.com

Christina T. Hassel
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, OH 44114-2316
Phone: (216) 621-0150
chassel@hahnlaw.com

16

18349372.1

# CERTIFICATE OF SERVICE

I, Christina T. Hassel, an attorney, hereby certify that on **January 15, 2025**, I electronically filed the foregoing, **Defendants Corey Brill's and Ticket Avenue Corp.'s Section 2-615 & 2-619 Motion to Dismiss Counts II and IV of Plaintiff's Complaint**, with the Clerk of the Court using the Odyssey eFile system, which will automatically send email notifications of such filing to all registered parties and counsel, and via electronic mail. Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*/s/ Christina T. Hassel*

17

18349372.1