# EXHIBIT F



Christina T. Hassel

Direct Phone: 216.274.2388
Direct Fax: 216.297.4160
Email: chassel@hahnlaw.com

**VIA EMAIL**

March 21, 2025

Wende J. Knapp, Esq.
Woods Oviatt Gilman
1900 Bausch & Lomb Place
Rochester, New York 14604
Tel. (585) 445-2651
Fax. (585) 362-4514
WKnapp@woodsoviatt.com
*Counsel for the Board of Trustees*
*of the Cayuga Home for Children, Inc.*

> **Re:    Response to February 27, 2025 Status of Employment Letter to**
> **Edward Hayes – RULE 408 SETTLEMENT COMMUNICATION;**
> **PRIVILEGED AND CONFIDENTIAL**

Dear Ms. Knapp,

This is sent in response to the letter sent to our client, Edward Hayes ("Hayes"), by Dr. Andy Lopez-Williams ("Lopez-Williams"), ostensibly on behalf of the Board of Trustees of the Cayuga Home for Children, Inc. DBA Cayuga Centers (the "Board"), on February 27, 2025 (the "Employment Letter"). As discussed further below, the accusations against Hayes in the Employment Letter are both unsubstantiated and offensive, and Lopez-Williams's actions in placing Hayes on administrative leave, without first following the Board's Bylaws, the terms of Hayes's Employment Contract, and the protections of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") — and also attempting to terminate Hayes's Employment Contract early on specious grounds — are discriminatory and illegal. While Hayes is motivated to file suit if need be due to this unwarranted mistreatment, we send this letter to ascertain whether an out-of-court resolution is worth exploring prior to taking that step, as a settlement would best serve the future of Cayuga Centers which is a professed priority of all parties.

As the Board is aware, Hayes led the development of Cayuga Centers for the last thirty years, growing Cayuga Centers into what it is today. Cayuga Centers was on the road to closure (as was common at the time with small congregate care providers) when Hayes assumed the leadership role in the organization. Since then, through his innovative, ingenuity, and evidence-based practice, Hayes turned Cayuga Centers into a thriving, impactful organization. Unfortunately, the recent actions of Lopez-Williams, in the name of the Board, and the auditors, Elaine Buffington



and Peggy Rowe (of Dannible & McKee, LLP) ("Buffington and Rowe"), not only threaten the reputation of Cayuga Centers, but also Hayes's legacy and the Board itself. Litigation would undermine the mission of Cayuga Centers and the Board, and would also bring to light unfavorable details regarding certain Board members' mistreatment of Hayes over recent years (especially as past and present members of the Board could be named individually in a lawsuit and deposed). What is more, the overblown and unsupported accusations against Hayes by Lopez-Williams and Buffington and Rowe, as set forth in the Employment Letter, are simply false. We strongly believe that Buffington and Rowe — especially Buffington after having repeatedly approved Cayuga Centers's audit and financial strategy, which has been consistent for almost a decade (since federal funds were first received) — have recently turned an about face in hopes of diverting the Board's attention from the instrumental and culpable role that Buffington and Rowe played in connection with the Board's accusations against Hayes. Lopez-Williams has chosen to scapegoat Hayes and act solely on misinformation from Buffington and Rowe, without any input from the senior leaders of Cayuga Centers and while minimizing the role of Board Finance Committee members — many of whom have historical knowledge and experience to repudiate Lopez-William's accusations. Any such continued defamation will be dealt with seriously going forward.

The Employment Letter further contains misleading statements that must be corrected. Namely:

- The term of Hayes's Employment Contract expires June 30, 2031, not on June 30, 2025 as the Employment Letter incorrectly avers. While a letter of twelve-months' notice of non-renewal was received by Hayes in June 2024, there is no record of the Board authorizing that letter in the minutes and a full Board vote likely never took place. There is also no Board record deciding to *not* automatically extend Hayes's Employment Contract to June 30, 2031, as required in the automatic extension clause. Lopez-Williams himself has stated multiple times that if there is no record of a Board action in the minutes, for all intents and purposes, it did not take place. By the plain language of Hayes's current Employment Contract, in particular Paragraph 4 thereof, June 30, 2019 was the ending date of Hayes's current Employment Contract; ***provided, however***, that "on June 30th of every even year in this agreement, this ending date will [be] extended by two years, unless the Board — prior to that date —votes not to extend." Accordingly, on each even-yeared June 30th during that term — *i.e.*, at least June 30, 2014, 2016, 2018, 2020, 2022, and 2024 — two years, or twelve years in total, were added to the original ending date of June 30, 2019. As such, the operative ending date at this time is June 30, ***2031***, subject to the exceptions in Paragraphs 3, 11, 14, and 15 of the Employment Contract.

- As stated during our prior call, we believe the incorrect June 30, 2025 ending date stemmed from an incorrect and retaliatory interpretation of the Employment Contract by Cayuga Centers's prior outside counsel, after the previous Board chair ordered Hayes to terminate the employment of now-interim CEO of Cayuga Centers, Lorraine Sanchez, an effort which Hayes strongly opposed. Hayes's resistance led the former Board chair and outside counsel to verbally threatened Hayes's employment, as depositions of past and present

18523517.1


Board members would reveal. The resulting independent investigation cleared Sanchez of any wrongdoing and led both the prior Board chair and outside counsel to cease their relationship with Cayuga Centers shortly thereafter. There is also no Board minute adopting prior counsel's radical and retaliatory reinterpretation of Hayes's Employment Contract.

- Additionally, each year there is an Annual Meeting of the entire Cayuga Centers Corporation. At this meeting, members of the corporation, as defined in the Bylaws, are asked to approve the acts of the Board of the previous year. At the September 25, 2024 Annual Meeting, the corporation approved the "acts as recorded in the minutes." Under this resolution, no "unminuted" actions relevant to this dispute were approved, which is in line with Lopez-Williams repeated statements about Board actions needing to be minuted to be valid.

- The alleged "significant financial discrepancies and irregularities" referred to in the Employment Letter address the financial management of Cayuga Centers, particularly with respect to federal grants, which has been monitored and approved by Buffington for the last *nine years*. The manner in which Cayuga Centers utilized federal funds to support its mission was no secret with no unaccounted for funds as implied by "discrepancies and irregularities". In fact, all of the practices referenced in the Employment Letter were transparently known to auditors, treasurer Richard Barbieri, the Finance Committee, and the Board, and those practices were consistently approved via the appropriate channels. It was only when Buffington's former firm was acquired by Dannible & McKee, LLP that these long-standing practices received added scrutiny (indeed, with Dannible & McKee actually approving these practices in 2023 the year of the acquisition). Moreover, it should be noted that the financial management strategy of Cayuga Centers is not uncommon amongst fellow not-for-profit organizations. There was no financial mismanagement whatsoever and all federal dollars were used, at all times, to support the mission of Cayuga Centers, help those in need, and directly fund growing programs to serve the maximum number of people. As such, the Employment Letter's claim that Hayes acted improperly with respect to Cayuga Centers's finances is not only false, but also extremely offensive and actionable defamation. Along with any financial settlement reached in connection with this dispute, Hayes expects the Board to issue him a formal apology, in writing, correcting the false accusations made in the Employment Letter.

- The Employment Letter purports to have been sent on behalf of the Board as a whole, but in the time since Hayes shared the Employment Letter with the entire Board, a number of its members have expressed shock and dismay over the tone and misrepresentations in the incendiary Employment Letter, as well as the mistreatment of Hayes. As such, upon information and belief, the Employment Letter, as written, was not agreed to by the Board at the February 26, 2025 meeting. In fact, it appears the Board solely authorized the sending of a letter to *respectfully* commence discussions regarding Hayes's contract term

18523517.1



— *not* an aggressive, accusatory letter threatening a termination the Board did not approve, such as the one authored by Lopez-Williams, written with the intent of insulting Hayes, a highly valued long-term employee who very recently suffered a major health event and permanent disability while performing his duties for Cayuga Centers. Also, upon information and belief, at the highly irregular February 26, 2025 Board Meeting — which was not part of the normal Board meeting schedule and was not conducted as an open meeting, despite Hayes asking to participate — per the minutes, the Board did not conduct a vote on either placing Hayes on administrative leave or terminating his employment. Indeed, several Board members will state in deposition that they did not understand that an administrative leave would be punitive and prevent Hayes from acting in his role of President & CEO. This was deliberately misrepresented in the Employment Letter and by you during our recent call. It also represents a significant overstepping by Lopez-Williams who has acted far outside his authority as Board chair. In 1987, the limited authority of the Board chair was established by the Board when then-Board president Robert Barry independently allowed the newly-hired Executive Director, John Henley, to live outside of the Auburn School District when residence was contractually required. As the Board minutes — and depositions by former Board members — will attest, the Board stated that only the Board as a whole, and not individual members or officers, had the authority to take action. This rogue campaign by Lopez-Williams against Hayes violates that standard.

There are a number of other problems with the Employment Letter, which will be the subject of litigation if a resolution cannot be reached out-of-court. Lopez-William seems to be acting upon the premise that Hayes was properly and timely informed by letter that his Employment Contract would not be renewed on June 29, 2024. There are no minutes from the Board stating this action was voted on or approved, which may have been done in executive session after the formal meeting was adjourned. Further, the Board's later actions invalidate this letter and waived the non-renewal, as Hayes's contract negotiations later restarted in good faith, of which there is written record. Although it is Hayes's position that his contract extends through June 2031, as a potential compromise, he proposed that the parties discuss a new Employment Contract in lieu of continuing to operate under the existing agreement. The Board was amenable to this proposal, going so far as to form a Contract Negotiating Committee and Succession Planning Committee (later merged) to explore this option.

On November 20, 2024, Hayes received an email from Lopez-William confirming that "…a work group related to the development of a new contract for [Hayes] as CEO/President was approved by the Board and initiated in October 2024. We want to ensure [Hayes] of our intent as a Board to utilize this work group to discuss the framework for a new contract and negotiate with you in good faith. Please note this is a priority and it is our intent and hope to move forward as efficiently as possible in this matter." This email alone nullifies the claims made by Lopez-Williams and yourself that Hayes received proper notification that his Employment Contract would not be renewed. Prior to his amputation, Hayes was informed that the Contract Negotiating Committee was drafting a three-year contract to propose to Hayes; indeed, even Lopez-Williams — before

18523517.1



forming a perception of disability — made comments to Hayes and Board members after Hayes's recent amputation, indicating that it is "more important to lock [Hayes] in than ever." Last, during the week of February 2, 2024, in response to Hayes postponing the meeting to review his Employment Contract for medical reasons, Lopez-Williams responded by email that he aligned with rescheduling because outside counsel was still finalizing the draft of a new contract.

All this changed rapidly in the time since Hayes suffered the recent dismemberment of his arm. The February 26, 2025 Board Meeting was scheduled while Hayes was still on intermittent FMLA leave. Although Hayes was not yet healed, he requested to be present at the Meeting so that he could show the Board his recovery progress and that he was still capable of running the agency. While Hayes habitually attended Board meetings, he was told by Lopez-Williams that staff were not welcome at the meeting which was a significant departure in the way Board meetings are run. At this time, Lopez-Williams did not inform Hayes that Hayes's handling of federal funds would be the topic of the meeting and that outside counsel would start the meeting by stating a case against Hayes and calling for a vote on his termination thereby violating FMLA and the terms of Hayes's Employment Contract addressing any attempts at termination. In fact, Lopez-Williams ignored numerous opportunities to let Hayes know about, and respond to, concerns with the audit. Several Board members told Hayes after the fact that they were not informed that Hayes asked to attend and was denied the right to do so by Lopez-Williams.

Hayes is contractually guaranteed, under Paragraph 11 of the Employment Contract, a right to address the Board prior to any adverse action being taken against him. Via the Employment Letter, Hayes was placed on a punitive administrative leave pending termination without giving him any opportunity to speak, which in and of itself is an adverse action. Moreover, no agenda was circulated before the February 26, 2025 Board Meeting and it does not appear that any minutes were taken at the Meeting. Hayes has also been informed that, prior to the Meeting, a paternalistic discussion took place regarding Hayes's physical condition, medical prognosis, and ability to continue performing his work for Cayuga Centers. This is not the first time Hayes's medical condition and physical health have been publicly discussed by the Board in an offensive, illegal fashion as depositions of former Board members will show. Even conducting such a discussion, behind Hayes's back and without his active input and cooperation, is evidence of violating the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*., which the Board should have been advised of by counsel at the meeting.

After the Board meeting, which again, did not involve any vote to place Hayes on administrative leave or terminate his employment, the threatening Employment Letter was sent to Hayes without first running the language of the Employment Letter by the Board as a whole. Concerningly, it strongly appears that the Board was kept unaware of Lopez-Williams's rogue campaign to defame Hayes, besmirch his legacy at Cayuga Centers, and interfere with his employment in violation of his Employment Contract and state and federal law. Upon information and belief, the Board also did not seem to be aware that the outrageous actions by Lopez-Williams (allegedly on behalf of the Board) in sending this Employment Letter to Hayes, while he is on intermittent FMLA leave,



which places the Board at serious risk of significant legal liability and bad press besides, if Hayes's mistreatment were to become known publicly. The decision to place Hayes on administrative leave impedes any transition to new leadership at Cayuga Centers, and likewise impairs the work of the organization. There was absolutely no need to take away Hayes's computer access and access to his work emails. Such unreasonable actions, which come across as harsh and punitive in nature, are strong evidence of retaliation in connection with Hayes's FMLA leave and of a filing worker's compensation claim following his recent medical procedure.

The threatened termination and other mistreatment of Hayes breached his Employment Contract and constituted wrongful discharge, as well as illegal discrimination on the basis of Hayes's age and disability in violation of Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and related state law, retaliation under the FMLA and worker's compensation laws, and defamation. There was a distinct shift in the Board's treatment of Hayes following his medical event and disability. Furthermore, the Board's recent adverse actions against Hayes threaten his recovery and have significantly added to his pain and suffering during this very difficult time. Hayes's surgeon will testify, if called to do so, on the adverse effects of this course of action by the Board, which has, among other things, impaired the healing of Hayes's skin graft, with research studies showing that stress has a direct impact on interfering with tissue regrowth. If legal action becomes necessary, we will seek damages, even potentially punitive damages, resulting from this outrageous conduct while Hayes — a long-tenured and highly respected employee of Cayuga Centers, who was instrumental in building the organization into what it is today — was recovering from a traumatic medical incident occurring on the job. Such treatment is simply unacceptable and will not be taken lightly going forward.

Finally, the offer made in the Employment Letter — amounting to just six months' severance, and demanding that Hayes both be shunned from Cayuga Centers's business and constantly "on call" to answer questions — is offensively small, given his tenure and crucial role in the development and growth of Cayuga Centers. Undersigned counsel and Hayes himself are aware of much more generous arrangements made previously to employees of much shorter tenure, who engaged in conduct that was actively detrimental to Cayuga Centers and its mission. Conversely, although the accusations against Hayes are biased and factually incorrect, he was offered a fraction of what has been paid for those other employees of Cayuga Centers. Such disparate conduct is strongly indicative of a discriminatory motive.

As referenced above, Hayes is prepared to file suit if need be, but he still hopes some amicable resolution can be reached that preserves his legacy, smooths the leadership transition from Cayuga Centers, and avoids legal liability and negative publicity for the Board and the organization. If Hayes is forced to file a lawsuit, he will assert claims sounding in contract, statute, and tort, on the basis of the above facts. Among other things, Hayes will seek all of his lost compensation through June 2031, damages for his pain and suffering and emotional distress due to the abusive and discriminatory treatment purportedly by the Board, any and all attorneys' and financial advisors'

18523517.1



fees incurred, punitive damages due to the malicious nature of the misconduct by the Lopez-Williams (in the name of the Board), who may be named individually for his defamatory and discriminatory campaign against Hayes, and all other damages and remedies available by contract and at law. Please be advised that this letter should be shared with the Board as a whole.

While we are very confident that Hayes will prevail in any litigation and receive a substantial award against Cayuga Centers and potentially Lopez-Williams himself, we are sending this letter to ascertain whether the Board is interested in first discussing an out-of-court resolution to avoid incurring the costs of litigation and reputational and business harm likely to arise from the alarming nature of Hayes's complaint against the organization. Please let me know if you would like to explore this further, so that we can set up a time to speak without additional delay.

Regards,

Christina T. Hassel

cc: Peter M. Katsaros, Esq.

18523517.1