# EXHIBIT G

# Woods Oviatt Gilman LLP

*Attorneys*

1900 Bausch & Lomb Place
Rochester, New York 14604

Tel: 585.987.2800
Fax: 585.454.3968
www.woodsoviatt.com

Writer's Direct Dial Number: 585.455.2651
Email: wknapp@woodsoviatt.com

April 11, 2025

Christina Hassel, Esq.
Peter Katsaros, Esq.
Hahn Loeser & Parks LLP
Sent via email to: chassel@hahnlaw.com and pkatsaros@hahnlaw.com
*Counsel for Edward Hayes*

**Re:** **Grounds for Early Termination of Employment Agreement with Edward Hayes**

Dear Christina:

Mr. Edward Hayes ("Hayes"), as president and CEO of Cayuga Home for Children, Inc. (the "Organization"), is subject to an employment agreement ("Agreement') dated November 14, 2012. Under that Agreement, Section 11 – Early Termination of Agreement provides that Mr. Hayes is entitled to receive the grounds upon which an early termination of the Agreement by the Organization's Board of Directors ("Board") may rely upon, should the Board vote in favor of such termination, and he shall have an opportunity to respond. The below will serve as the grounds by which a termination action may be based. Mr. Hayes will have two weeks from the date of this letter, by Friday, April 25, 2025, to provide his response in writing. After that time, the Board will consider its next steps regarding the Agreement's early termination and Mr. Hayes's employment with the Organization. For clarity, the Board will rely on Mr. Hayes's written response as there is no obligation under his Agreement for him to appear in-person.

Under the New York Not-for-Profit Corporation Law ("N-PCL"), an officer, which includes the CEO and president, is responsible for the day-to-day management and operations of the nonprofit, with duties to act in the organization's best interests. These fiduciary duties include the duty of care, duty of loyalty, and duty of obedience, and are inherent to the role and general nonprofit governance and inferred under N-PCL § 717. The CEO and president's role is critical in ensuring compliance with the organization's mission, legal obligations, and financial responsibilities.

Based on available information, Mr. Hayes has failed to substantially fulfill his obligations and has breached the Agreement by failing to fulfill and/or breaching his duties as CEO and president for the enumerated reasons below.

{9832881: }

## Financial Concerns and Mismanagement

As previously stated, there have been significant concerns escalated internally and by the Organization's external auditors regarding significant financial discrepancies and irregularities under Mr. Hayes's oversight, particularly over the past several years. Specifically, there is evidence of federal award funds not being used as required under the Unaccompanied Children ("UC") umbrella of federal contracts, and use of the funds to cover other non-federal, underperforming programs. For example, Mr. Hayes appears to have engaged in a systematic and inappropriate drawdown practice of using UC federal funds inappropriately and directed his team to allocate these federal funds for non-federal purposes, even when the team questioned this practice. These funds were used to, among other purposes, cover administrative expenses, beyond the allowable percentage under the UC federal contracts, and to prop up underperforming programs Organization-wide. This pattern served to hide underperforming programs and the overall underperformance of the Organization as a whole from the Board.

A portion of the above misappropriation of funds was also the subject of a Department of Health and Human Services ("HHS") audit of the Organization, wherein HHS notified Mr. Hayes in September 2024, of a review by HHS of the Organization's compliance, or potential lack thereof, with federal regulations and laws related to the Organization's expenditures and drawdowns on the federal UC awards. HHS, in a recent letter dated April 8, 2025, confirms the concerns that were raised internally and by external auditors and states that the Organization's "drawdown patterns did not align with the expenditures recorded in the financial records which raise concerns about the timeliness and accuracy of the drawdowns." The letter goes on to say that "it appears Cayuga's drawdowns were not driven by actual expenditures," and labels the Organization's practices as inconsistent and inaccurate. HHS identifies tens of millions of dollars in question, which underscores the severity of the financial issues created under Mr. Hayes's leadership. In fact, this issue alone could force closure of the Organization.

Beyond the HHS audit, there is evidence that the Organization suffered an $8 - $12 million dollar deficit for 2023, not in the range of $1M that was communicated to the Board, and may suffer yet another significant loss – an expected loss for 2024 in the amount of $10 or more million dollars.

Overall, these irregularities may have a devastating, wide-ranging effect on the Organization's future. We expect more information to materialize once the auditor has finalized its report, after being delayed nearly one year after the 2024 fiscal year end due to Mr. Hayes's actions. Adding additional concern are recent notifications that, due to the audit's delay, the Organization's banking partner has rescinded its line of credit, thereby putting payment of payroll at risk. Further, the bank has threatened closure of the Organization's account due to non-compliance of its requirements based on the lack of an audit report. This is yet more fallout from Mr. Hayes's decisions.

Moreover, the Organization was recently forced to layoff approximately 200 individuals due to the financial issues resulting from Mr. Hayes's financial mismanagement that includes, but is not

limited to, overstaffing, overspending, or unnecessary expenditures such as office space leasing that was beyond what was needed by the Organization.

Based on the information above, the Board is already alarmed at the information currently available. The amount and scope of Mr. Hayes's actions constitute a fundamental breach related to the financial management of the Organization, as well as its obligations under its UC federal contracts, IRS regulations, N-PCL, and other applicable laws – all of which may jeopardize the Organization's future.

**Abuse of Organization Resources**

There are also concerns about the questionable judgment and potential abuse of the Organization's resources by Mr. Hayes. For example, Mr. Hayes has allowed the Organization's limited resources to pay for an Organization vehicle and a driver for his wife, in addition to the Organization vehicle already assigned to Mr. Hayes (Of note: Mr. Hayes has also expended resources on a driver for the vehicle assigned to him, although this benefit is not provided for under his Agreement). It is unclear why and for what purpose Mr. Hayes has approved a vehicle and driver for his wife's personal use. The Board is not aware of Mrs. Hayes serving in any official capacity where that expenditure is reasonable or in the best interest of the Organization. Of additional concern, it was recently discovered that Mr. Hayes's wife was issued or at least had access to an Organization credit card – presumably, again, for personal use, which is wholly inappropriate. This is inconsistent with the Organization's policies and inconsistent with IRS regulations regarding taxable income.

A preliminary review of expenses submitted by Mr. Hayes in 2024 has also raised further concerns that many may, in fact, be personal in nature and not supported by business-related purposes. For example, between January and October 2024, Mr. Hayes charged $48,007.87 to the Organization for stays at luxury hotel chain Conrad Hotel properties. The stays included $19,400.62 at Conrad New York and $14,978.57 at Conrad Nashville, without any documented business justification. After a review of his calendar and other relevant material, there is no Organization-related purpose for these extravagant expenditures. It is also unclear why Mr. Hayes, with a stated primary residence in New Jersey, would need to regularly stay in New York City, and in luxury accommodations, when there were no business justifications to do so.

Additionally, it appears Mr. Hayes has engaged in a pattern of either failing to provide a business rationale related to or altering documentation to support some expenses. By way of example, some receipts submitted by Mr. Hayes in support of high-value expenses were visibly altered, including examples where receipts were physically cut and taped back together to remove or obscure transaction details. Moreover, descriptions and business justifications were often not provided at the time of submission for reimbursement and, in some limited cases, were only provided after Board inquiry. Even so, retroactive descriptions do not comply with federal law or the Organization's policies.

In September 2024 alone, there are: multiple meal and entertainment charges on weekends with no documented Organization purpose; numerous non-itemized or altered receipts; high-value

● *The art of representing people* SM

Uber charges associated with non-Organization activities (e.g., Stephen Sondheim Theater transportation); and other charges for Broadway.com and Prime restaurant with no Organization-related substantiation. Throughout 2024, there are also many luxury restaurant expenses ranging from $700 - $1800 for meals that suggest the charges were made for personal and not Organization purposes.

Overall, spread throughout the 2024 fiscal year, expenditures were submitted and paid without contemporaneous business justifications, adequate receipts, or calendar alignment. Altered and cropped receipts, missing travel requests, delayed expense explanations, and luxury lodging and meal expenses—often incurred on weekends or during periods of no Organization activity—suggest a pattern of abusing the Organization's resources.

This spending behavior does not align with the fiduciary expectations of nonprofit leadership, particularly if they are not reasonable, necessary, and mission-driven.

The above demonstrates that Mr. Hayes violated Organization policy, which requires submission of the "business purpose of the trip, the date and place of the trip, [and a] list of the expenses incurred [with] receipts, " but also IRS standards and regulations that govern whether such expenses are deductible or must be treated as personal income. There is a legal obligation to prevent waste and to ensure that executive expenditures are transparent, auditable, and compliant with benefit standards, which Mr. Hayes has appeared to breach.

## Misleading the Organization's Board of Directors

There are also several key areas where Mr. Hayes has misled or failed to adequately inform the Board regarding the significance of financial issues facing the Organization or the real nature of the expenses he submitted for approval. For example, Mr. Hayes did not inform the Board of the seriousness of the HHS audit request and, despite knowing how he directed that UC federal funds be used for non-federal purposes, he failed to disclose to the Board about the potential fall-out of his practice. Additionally, Mr. Hayes informed the Board that the Organization only suffered a deficit of $1M in 2023, where the deficit is likely in the $8-12M dollar range. His lack of transparency hindered the Board's ability to address critical financial issues promptly.

The above is not an exhaustive list of issues identified by the Board, but the significance of the issues currently identified has led the Board to provide the grounds for termination included in this letter.

A summary of key issues serving as a basis for termination of the Agreement include, but are not limited to, the following:

### 1. Financial Mismanagement

- In September 2024, Mr. Hayes knew the federal government, HHS, was looking into the Organization's use of funds under the UC-related contracts for non-UC-related contracts.

Instead of communicating the significance and severity of what HHS may find, Mr. Hayes appears to have deliberately downplayed the HHS audit.

- Mr. Hayes directed to have UC federal funds misappropriated to cover non-federal expenses (e.g., administrative costs and non-federal programs).

- Mr. Hayes demonstrated negligence in overseeing the Organization's financial management regarding misappropriation of UC federal funds. In directing funds that were specifically tied to UC federal contracts and instead allocating those funds for the Organization's expenses and unrelated programs overall, he mismanaged and/or misappropriated UC funds placing the Organization at risk of breaching federal UC contracts. That breach or inappropriate use of federal funds could result in the loss of tens of millions of dollars, as evidenced by the HHS audit outlining concerns and irregularities in the Organization's drawdown practice he directed. Mr. Hayes has failed to protect the Organization's legal and contractual obligations.

- By mid-December 2024, Mr. Hayes was aware that the Organization's regular financial audit had revealed significant financial irregularities, suggesting poor oversight or potential misconduct. Despite this knowledge, he failed to disclose the severity of the issues. A meeting with auditors on or around January 21 further clarified the serious misappropriation of funds on an ongoing basis.

- A review by auditors and the Board finance committee reveals that the Organization may face a deficit of at least $10 million for 2024 and, in fact, suffered a deficit in 2023 of $8-$12 million dollars, resulting from mismanagement and/or misappropriation of funds. Mr. Hayes failed to address or mitigate this financial instability.

- Further, approximately 200 Organization employees were recently laid off because of the Organization's financial issues, a direct result of Mr. Hayes's poor leadership.

- Overall, the discovered financial mismanagement jeopardizes the Organization's solvency and operational viability. This reflects Mr. Hayes's failure to manage the Organization's finances responsibly.

## 2. Abuse of Organization's Resources
- Here, Mr. Hayes's authorization to allow for his wife to use limited Organization resources for a personal vehicle and driver is just one example of the poor judgment and demonstration of his abuse of resources.
- Additionally concerning are multiple luxury hotel stays and extravagant dinners on the Organization's dime that do not appear to correspond to any Organization-related business.
- Manipulation of receipts provided to "justify" expenses also create a question of authenticity and transparency – an expectation of a CEO and president.

**3. Lack of Transparency with the Board**

- Mr. Hayes's failure to provide accurate and timely financial information regarding the yearly financial audit and HHS audit to the Board undermines transparency and erodes trust in the Organization's operations. More specifically, Mr. Hayes failed to adequately inform the Board of the seriousness of HHS audit and the significance of the financial issues that HHS would likely find and did find, per its April 8, 2025, letter. Instead, Mr. Hayes glossed over the audit and failed to prepare the Board for the recent bombshell letter that questions tens of millions of dollars of "inappropriate" and "inconsistent" drawdown practices.

- Mr. Hayes also failed to ensure the timely completion of the yearly financial audit resulting in a significant delay - impairing financial oversight and hindering the Board's ability to address critical financial issues promptly. As of the date of this notice, it is anticipated that the audit will not be completed until June 2025 – nearly a full year after the Organization's fiscal year ended. Generally, a non-profit organization is expected to submit its audited financial reports within 4.5 months following the close of the fiscal year. While extensions may be requested, the significant delay and failure to make the Board aware of the severity of the auditors' concerns in a timely manner further compound the Board's ability to timely address any uncovered financial issues. Further, this delay has nearly crippled the Organization after its line of credit was rescinded by its bank due to non-compliance of its requirements based upon the lack of a finalized Organization financial audit.

- Overall, Mr. Hayes kept the Board uninformed as to the dire state of the Organization's finances yet spent extravagantly while knowing the precarious financial position of the Organization.

**4. Breach of Trust**

- By participating in the financial mismanagement and misappropriation of UC federal funds and allowing significant deficits to grow, Mr. Hayes has failed to act in the Organization's best interests.

- Adding further to the breach of trust is Mr. Hayes abuse of the Organization's resources including, but not limited to: having the Organization pay for his wife, a non-employee, to use an Organization vehicle and fund the hiring of a driver, as well as use of an Organization credit card, and spending Organization's resources on luxury hotels and extravagant meals that do not appear to be related to any Organization purpose.

- Finally, failing to adequately keep the Board informed of the seriousness of the Organization's financial issues has resulted in an overall lack of trust in Mr. Hayes's ongoing leadership by the Board. The Board has a fiduciary duty under N-PCL and Mr. Hayes has left the Board no choice but to act.

## Conclusion

Mr. Hayes's actions reflect violations of the role of a CEO and president, as well as the inferred fiduciary duties under New York Not-for-Profit Corporation Law, IRS regulations, and federal regulations associated with financial management of federal contracts. His actions also violate the the Organization's policies including, but not limited to, Purchasing Policy and Procedure and Travel Expense and Reimbursement. As the CEO and president, his duties, whether enumerated or inferred, are fundamental responsibilities that fall under his obligations to the Organization and leadership role. The breaches outlined above compromise the Organization's financial health, legal standing, and integrity. Additionally, beyond Mr. Hayes's legal obligations to comply with his duties under the law, his actions jeopardize the organization's ability to fulfill its mission, sustain operations, and/or maintain Board and other stakeholders' trust, all of which support a decision for early termination of the Agreement – a decision the Board has good reason to believe will protect the Organization's interests. The Board has a fiduciary duty to act, and it must follow that duty!

If Mr. Hayes chooses to respond to the above regarding the early termination of the Agreement, the Board will expect that response by April 25, 2025, after which time the Board will consider its next steps.

Notwithstanding the above, the Board still asserts and reserves its rights to rely on the 12-month notice provided to Mr. Hayes dated June 27, 2024, wherein the Board duly voted and agreed not to extend and/or renew Mr. Hayes's Agreement, which notice was provided to him in a timely manner and in accordance with his Agreement. As such, the Board further expects the Agreement to terminate on June 30, 2025, based on that notice and in accordance with the Agreement.

Very truly yours,

WOODS OVIATT GILMAN LLP

Wende Knapp

*● The art of representing people* SM