# EXHIBIT I

 

Christina T. Hassel

Direct Phone: 216.274.2388
Direct Fax: 216.297.4160
Email: chassel@hahnlaw.com

**VIA EMAIL**

April 25, 2025

Wende J. Knapp, Esq.
Woods Oviatt Gilman
1900 Bausch & Lomb Place
Rochester, New York 14604
Tel. (585) 445-2651
Fax. (585) 362-4514
WKnapp@woodsoviatt.com

*Counsel for the Board of Trustees*
*of the Cayuga Home for Children, Inc.*

> **Re:** **Response to April 11, 2025 Unlawful Termination Letter – RULE 408 SETTLEMENT COMMUNICATION; PRIVILEGED AND CONFIDENTIAL**

Dear Wende,

This letter is sent at your request to respond in writing to the April 11, 2025 letter sent to me on behalf of our client, Edward Hayes ("Hayes"), by the Board of Trustees of the Cayuga Home for Children, Inc. DBA Cayuga Centers (the "Board") (*i.e.*, the "Unlawful Termination Letter"). I would like to begin this response by noting our consternation at the Board's refusal to (1) provide the materials that we requested, on behalf of Hayes, to respond in good faith to the intentionally offensive Unlawful Termination Letter, or (2) permit Hayes to address the Board regarding the allegations made against him. If Dr. Lopez-Williams ("Lopez-Williams") and the Board's auditors are so confident in the truth of their accusations, then what harm will come from Board members hearing directly from Hayes prior to making their decision? Likewise, what is the harm from providing Hayes with the records the Board is relying upon, so that he can provide a more specific and detailed response to these very serious accusations? It is clear that Lopez-Williams and his cohorts seek to silence Hayes — despite his longstanding contributions to Cayuga Centers and recent medical incident while on a company trip — to force the Board to make its decision based on an inaccurate, defamatory, and biased record. Although we cannot compel the Board to produce documents on an informal basis now, be assured they will be requested and produced in discovery. To the extent the documents contradict the Board's current accusations, that will be proof positive of its bad faith and discriminatory actions towards Hayes.

18613497.1



Not only is the Board's scorched earth approach in breach of its obligations to our client, it all but guarantees that this dispute will not be resolved without protracted, messy litigation. While we would prefer not to take that step and to work out a mutually satisfactory resolution between the parties, Hayes is prepared to take all steps necessary to defend his reputation and prevent further harm due to the Board's breaches of contract and discriminatory, illegal, and tortious conduct. Please also be advised that, to the extent that Hayes has been defamed by Lopez-Williams, any other members of the Board, Dannible & McKee, LLP, Elaine Buffington, and/or Peggy Rowe in connection with this recent campaign of disinformation, they are intentional tortfeasors and will be named as parties individually. Beyond compensatory damages, including for lost wages and Hayes's emotional and physical suffering, we will seek punitive damages and attorneys' fees due to this intentional misconduct.

That said, unsurprisingly, there is still no merit to the accusations in your Unlawful Termination Letter and related emails (which are just elaborations on the prior accusations rebutted in our letter dated March 21, 2025). It is a fact that neither Hayes nor his wife have ever spent Cayuga Centers' funds improperly for personal expenses, misused credit cards or vehicles, or otherwise wasted the resources of the organization. Contrary to the fantastical depictions in the Unlawful Termination Letter, the Hayes family lives in a modest home, their primary vehicle is over twelve years old, and Hayes has worked tirelessly to benefit of Cayuga Centers, including almost every weekend and holiday. Hayes's legacy at Cayuga Centers spans decades — turning the organization into what it is today — and he was recently disabled due to a work-related condition. To now paint Hayes as a grifter who has been raiding Cayuga Centers' coffers is unbelievably offensive, let alone blatantly false and discriminatory on the basis of his age and disability. Lastly, the tone and content of the Unlawful Termination Letter are directly contrary to the Board's prior directive to work out a mutually amicable exit strategy with respect to Hayes's Employment Contract.

Given the paucity of real proof of misconduct by Hayes, it is clear the Board is contorting and inflating the evidence in an attempt to exonerate the Board — including Lopez-Williams himself — of its key role in *every decision* cited in the Unlawful Termination Letter. Put plainly, the Board (and certain individuals) expressly approved of Hayes's actions for years, but are now dishonestly seeking to make Hayes a scapegoat. For example:

| **ACCUSATION** | **REALITY** |
|---|---|
| "Hayes appears to have engaged in a systematic and inappropriate drawdown practice of using UC federal funds inappropriately and directed his team to allocate these federal funds for non-federal | This accusation was fully rebutted in our prior letter. As stated in that letter, there was no financial mismanagement whatsoever and all federal dollars were used, at all times, to support the mission of Cayuga Centers, help those in need, and directly fund growing |



| | |
|---|---|
| purposes, even when the team questioned this practice." | programs to serve the maximum number of people.<br><br>The past ten years' worth of records will confirm that Cayuga Centers drew down federal funds based on the advice of the former CFO, and Hayes kept the Board informed — and also obtained its authorization, as appropriate — at all times. This is reflected many, many times in the Board minutes. The records and deposition testimony (if necessary) will show the Board was always well aware of Cayuga Centers' use of UC "true-ups" — which was the former CFO's approach to drawing down unused federal funds. Past and present Board members will further testify that Cayuga Centers elected to employ an "entrepreneurial" approach, in which it developed excess capacity so that it could grow into it over time. |
| The HHS audit "letter dated April 8, 2025, confirms the concerns that were raised internally and by external auditors" and the HHS audit was not communicated to the Board by Hayes. | This accusation shows the manner in which the Board is embellishing evidence against Hayes. Hayes promptly informed the Board when HHS requested information in September 2024. The April HHS letter did ***not*** determine there was misconduct by Cayuga Centers and primarily addressed the timing of the drawdowns and the availability of certain records. Further, HHS states only that "further review into Cayuga's drawdown process…is necessary" and requests supplemental records. At most, this shows that HHS is investigating, nothing else conclusive has been determined. |
| "[T]here is evidence that the Organization suffered an $8 - $12 million dollar deficit for 2023, not in the range of $1M that was communicated to the Board, and may suffer yet another significant loss – an expected loss | Our client is confused by this accusation for a couple reasons:<br><br>***First***, based on Hayes's personal recollection (as the Board has refused to share the 2023 audit prior to this response), the 2023 audit |

18613497.1



| | |
|---|---|
| for 2024 in the amount of $10 or more million dollars." | showed a deficit in the neighborhood of $5 million, which is what Hayes timely reported to the Board. It is unclear how the Board came to believe the amount Hayes reported was closer to $1 million, as that was never stated by Hayes. |
| | *Second*, the 2024 audit should have been completed by November 2024, and upon information and belief, it is still not finished. Thus, it is unclear how the Board expected Hayes to have reported anything about the final results of the 2024 audit. |
| A layoff of 200 employees was required due to Hayes's mismanagement of Cayuga Centers. | Hayes has long known layoffs were needed, which he has discussed with the Board. That said, it was Lopez-Williams's inept handling of the layoffs that resulted in many employees needlessly being terminated. If Hayes had been permitted to participate in this process, with his superior understanding of the issues and solutions, the number of layoffs could have been minimized. The extent of the layoffs was also exacerbated by the Board's refusal to permit Hayes to engage in fundraising efforts at this time. |
| Hayes has improperly expended Cayuga Centers' funds on travel expenses staying at the Conrad chain of hotels, without any documented business justification, including in New York City despite living in New Jersey. | This spurious accusation contains numerous falsities. |
| | As a threshold matter, Hayes was required by contract to maintain residence in *Auburn, New York* — which is a five hour-plus drive to New York City. Hayes's *daughter*, not Hayes himself, resides in New Jersey. The Board's confusion likely stems from the fact that Hayes would often spend nights sleeping in his daughter's basement to avoid incurring additional hotel expenses. Unfortunately, this comment is still more proof of the Board's sloppy investigation precipitating this letter. |


| | The use of Conrad hotels by Hayes came at the suggestion of the then-current Board chair around 2016 and the Board chairs have continued to approve these stays. In turn, Hayes has tried to minimize the expense by spending the night with his daughter when possible. |
| --- | --- |
| | Indeed, due to the number of nights Hayes was forced to spend in hotels, in 2018 the Board indicated that it would subsidize his living in New York City when Hayes was ready to move. In 2021, he presented this plan to the Board, which was not approved; however, the Board once again instructed Hayes to continue staying in hotels like the Conrad hotels. |
| Hayes recently took a trip to Nashville for non-business purposes using Cayuga Centers funds. | This was an annual trip by Hayes for business and fundraising purposes, which has been approved by the Board for years and most recently was approved by Lopez-Williams himself. Any expenditures for non-work purposes were paid for with the Hayes's own funds, not the funds of Cayuga Centers. The Board has no evidence of any improper expenditures on this trip. |
| Hayes submitted incomplete receipts or requests for reimbursement to the Board; has incurred expenses for meals and entertainment charges. | All charges were for organizational activities and they were signed off on at the time. Expensive meals and tickets were for large meals and events with staff, consultants, Board members, donors, and potential donors. At no point has any Board chair raised any concerns about Hayes's hotel expenses or any expenses, prior to this time. If there were concerns, why were they not raised? If receipts needed to be more specific, why was this never brought up and why were expenses signed off on? |
| | In addition, the manner in which Hayes submitted his expenses was at the instruction |


| | of the former Board chair, and was sanctioned by Buffington for the past nine years (along with Cayuga Center's practices for drawing down federal funds). If this had been raised by Lopez-Williams in a normal manner, rather than through this vindictive witch hunt, it could have been easily resolved. It is also highly suspicious that it was only raised now, when the Board is seeking to terminate a recently disabled employee in breach of his Employment Contract. Lopez-Williams in particular seems to harbor a discriminatory bias due to Hayes's recent disability. |
|---|---|
| "Mr. Hayes has allowed the Organization's limited resources to pay for an Organization vehicle and a driver for his wife, in addition to the Organization vehicle already assigned to Mr. Hayes." | Cayuga Centers has never purchased a car for Mrs. Hayes. The Board must formally withdraw this egregious false accusation, which has been made repeatedly. Moreover, Hayes was instructed by the former Board co-chair to use a driver so that he could conduct Cayuga Centers business while on the road. |
| "[I]t was recently discovered that Mr. Hayes's wife was issued or at least had access to an Organization credit card – presumably, again, for personal use, which is wholly inappropriate." | Mrs. Hayes has never misused an organization credit card. For decades, Mrs. Hayes has helped with fundraising, entertaining donors and staff, organizing events, and counseling staff, with no compensation. The Board also authorized her to travel with Hayes in Section 12 of his Employment Contract and significant time was spent by them in airports for work-related travel. A credit card in Mrs. Hayes's name saved Cayuga Centers the cost of baggage fees and airport lounge fees, and allowed her to help with fundraising without having to front the expenses (note, the credit card in question is a Delta Amex used specifically for the purpose of avoiding travel fees). Lopez-Williams has been approving these expenses all along. |


| "There are also several key areas where Mr. Hayes has misled or failed to adequately inform the Board regarding the significance of financial issues facing the Organization or the real nature of the expenses he submitted for approval." | This accusation appears to be merely a reiteration of the Board's earlier claims.  To the extent any other response is required, we emphasize that the Board was kept contemporaneously informed of all major issues affecting Cayuga Centers, including through Hayes's monthly reports and appearances at regular Board meetings up until the point when he was improperly barred from doing so.  The Board further approved all of the actions which now form the alleged bases for Hayes's early termination, which is strong evidence of discrimination. |
| --- | --- |

Finally, we would be remiss not to emphasize the risks inherent to the Board's current course of conduct.  If not ceased, the Board will be liable for breaches of the Employment Contract, tort, and violations of federal and state employment statutes.  The timing of the Board's vendetta against Hayes alone — coming immediately at the heels of his recent disability, though the alleged conduct by Hayes was authorized by the Board for many years — is compelling evidence of discriminatory animus and grounds for a substantial jury award for Hayes for his lost compensation, pain and suffering, and attorneys' fees.  In employment discrimination cases, "***timing alone is sufficient to support an inference of causation***."  *Beattie v. Farnsworth Middle School*, 143 F. Supp. 2d 220, 230 (N.D.N.Y. 1998); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir. 1998) (retaliation causation inference appropriate where adverse employment action followed complaint by two months); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995) (timing supported inference of discrimination); *Davis v. State Univ. of New York,* 802 F.2d 638, 642 (2d Cir. 1986) (same).  The Board's unprovoked attacks on Cayuga Centers' long-time leader at a time when he is recently disabled and in retaliation for his medical leave under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* — along with the incendiary nature of the Board's unfounded accusations — will also cast the organization in an extremely negative public light.

In light of the above, Hayes is willing to resolve this matter on the following conditions:

- A payment of $3.6 million, representing the six-year remaining term on his Employment Contract, based on the analysis set forth in our prior letter.  Such amount is in line with Hayes's tenure with Cayuga Centers and amounts provided to past employees.

- A new vehicle, of similar make and model to Hayes's current company vehicle, along with a stipend for maintenance, repair, and insurance for one year.

- Medical insurance through 2031.

18613497.1



- Life insurance for Hayes and his wife through Hayes's eightieth birthday.

- Damages for pain and suffering and emotional distress resulting from the Board's recent actions, described above, in the amount of $1,000,000.

- Reimbursement of Hayes's attorneys' fees and financial management fees incurred in connection with this dispute, starting in the summer of 2024.

- A laptop and telephone provided for Hayes.

Hayes hereby demands that this response be provided for review by the entire Board, pursuant to Section 11 of his Employment Contract. While we do not believe it will be fruitful for counsel to continue debating the individual points above — as all such issues will be hashed out in litigation if need be — we are available next week for a call to discuss our counterproposal and the Board's response. Please let us know when you are free.

Regards,

Christina T. Hassel

cc: Peter M. Katsaros, Esq.

18613497.1