**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EDWARD HAYES,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>CAYUGA HOME FOR CHILDREN, INC., *et al.*,<br><br>Defendants/Counterclaimant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:25-cv-9333-LJL<br><br>**PROTECTIVE ORDER AND PROTOCOL FOR ELECTRONICALLY STORED INFORMATION** |

LEWIS J. LIMAN, United States District Judge:

WHEREAS all of the parties to this action (collectively, the "Parties," and individually, a "Party") request that this Court issue a stipulated protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect the confidentiality of certain nonpublic and confidential material that will be exchanged pursuant to and during the course of discovery in this case;

WHEREAS, the Parties, through counsel, agree to the following terms;

WHEREAS the Parties intend this Protective Order to comply with the Federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Health Information Technology for Economic and Clinical Health Act of 2009 (the "HITECH Act"), and regulations adopted thereunder by the U.S. Department of Health and Human Services, 45 C.F.R. Parts 160, 162, and 164 (the "HIPAA Rules"), 42 C.F.R. Part 2, and applicable state laws and regulations governing patient privacy and protecting healthcare information;

WHEREAS, the Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords only extends to the limited information or items that are entitled, under the applicable legal principles, to confidential treatment;

WHEREAS, the Parties further acknowledge that this Protective Order does not create entitlement to file confidential information under seal; and

WHEREAS, in light of these acknowledgments, and based on the representations of the Parties that discovery in this case will involve confidential documents or information the public disclosure of which will cause harm to the producing person and/or third party to whom a duty of confidentiality is owed, and to protect against injury caused by dissemination of confidential documents and information, this Court finds good cause for issuance of an appropriately tailored confidentiality order governing the pretrial phase of this action;

IT IS HEREBY ORDERED that any person subject to this Protective Order—including without limitation the Parties to this action, their representatives, agents, experts and consultants, all third parties providing discovery in this action, and all other interested persons with actual or constructive notice of this Protective Order—shall adhere to the following terms:

## I. STANDARD TERMS

1. Any person subject to this Protective Order who receives from any other person subject to this Protective Order any "Discovery Material" (i.e., information of any kind produced or disclosed pursuant to and in course of discovery in this action) that is designated as "Confidential" pursuant to the terms of this Protective Order (hereinafter "Confidential Discovery Material") shall not disclose such Confidential Discovery Material to anyone else except as expressly permitted hereunder.

2. The person producing any given Discovery Material may designate as Confidential only such portion of such material the public disclosure of which is either restricted by law or will cause harm to the business, commercial, financial or personal interests of the producing person and/or a third party to whom a duty of confidentiality is owed and that consists of:

(a) previously nondisclosed financial information (including without limitation profitability reports or estimates, percentage fees, design fees, royalty rates, minimum guarantee payments, sales reports, and sale margins);

(b) previously nondisclosed material relating to ownership or control of any non-public company;

(c) previously nondisclosed business plans, product development information, or marketing plans;

(d) any information of a personal or intimate nature regarding any individual, including but not limited to Protected Health Information ("PHI"); or

(e) any other category of information hereinafter given confidential status by the Court.

3. With respect to the Confidential portion of any Discovery Material other than deposition transcripts and exhibits, the producing person or that person's counsel may designate such portion as "Confidential" by: (a) stamping or otherwise clearly marking as "Confidential" the protected portion in a manner that will not interfere with legibility or audibility; and (b) producing for future public use another copy of said Discovery Material with the confidential information redacted.

4. With respect to deposition transcripts, a producing person or that person's counsel may designate such portion as Confidential either by (a) indicating on the record during the deposition that a question calls for Confidential information, in which case the reporter will bind the transcript of the designated testimony (consisting of question and answer) in a separate volume

and mark it as “Confidential Information Governed by Protective Order”; or (b) notifying the reporter and all counsel of record, in writing, within 30 days after a deposition has concluded, of the specific pages and lines of the transcript and/or the specific exhibits that are to be designated Confidential, in which case all counsel receiving the transcript will be responsible for marking the copies of the designated transcript or exhibit (as the case may be), in their possession or under their control as directed by the producing person or that person’s counsel by the reporter. During the 30-day period following the conclusion of a deposition, the entire deposition transcript will be treated as if it had been designated Confidential.

5. If at any time prior to the trial of this action, a producing person realizes that some portion(s) of Discovery Material that she, he, or it had previously produced without limitation should be designated as Confidential, she, he, or it may so designate by so apprising all prior recipients of the Discovery Material in writing, and thereafter such designated portion(s) of the Discovery Material will thereafter be deemed to be and treated as Confidential under the terms of this Protective Order.

6. No person subject to this Protective Order other than the producing person shall disclose any of the Discovery Material designated by the producing person as Confidential to any other person whomsoever, except to:

(a) the Parties to this action, their insurers, and counsel to their insurers;

(b) counsel retained specifically for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

(c) outside vendors or service providers (such as copy-service providers and document-management consultants, graphic production services or other litigation support services) that counsel hire and assign to this matter, including computer service personnel performing duties in relation to a computerized litigation system;

(d) any mediator or arbitrator that the Parties engage in this matter or that this Court appoints, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(e) as to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

(f) any witness who counsel for a Party in good faith believes may be called to testify at trial or deposition in this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(g) any person retained by a Party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto;

(h) stenographers engaged to transcribe depositions conducted in this action; and

(i) this Court, including any appellate court, and the court reporters and support personnel for the same.

With respect to Discovery Material designated by the producing person as Confidential containing PHI (defined in Point II, *post*), the Parties and their attorneys shall be permitted to use and disclose PHI solely for the purposes of this litigation. PHI shall not be contained, referenced within, or annexed to a pleading, motion, exhibit, or other paper submitted to the Court, unless the paper bears an appropriate legend. In compliance with HIPAA, 42 C.F.R. Part 2 and related state laws, the authorizations and orders set forth in this Order expressly include PHI concerning psychological and mental health records, disability status and records, substance abuse and treatment history, and HIV status, as well as records concerning other sexually transmitted diseases if so requested. All uses and disclosures of PHI shall comply, to the extent practicable, with the minimum necessary standards set forth in 45 C.F.R. § 164.502. Any recipient of PHI shall implement reasonable administrative, technical, and physical security safeguards for such PHI.

7. Prior to any disclosure of any Confidential Discovery Material to any person referred to in subparagraphs 6(d), 6(f) or 6(g) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement in the form annexed as an Exhibit hereto stating that that person has read this Protective Order and agrees to be bound by its terms. Said counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel either prior to such person being permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first.

8. Any Party who objects to any designation of confidentiality may at any time prior to the trial of this action serve upon counsel for the designating person a written notice stating with particularity the grounds of the objection. If the Parties cannot reach agreement promptly, counsel for all Parties will address their dispute to this Court in accordance with Paragraph 1(C) of this Court's Individual Practices in Civil Cases.

9. Any Party who requests additional limits on disclosure (such as "attorneys' eyes only" in extraordinary circumstances) may at any time prior to the trial of this action serve upon counsel for the receiving Party a written notice stating with particularity the grounds for the request. If the Parties cannot reach agreement promptly, counsel for all Parties will address their dispute to this Court in accordance with Paragraph 1(C) of this Court's Individual Practices in Civil Cases.

10. A Party may be requested to produce Discovery Material that is subject to contractual or other obligations of confidentiality owed to a third party. Within two business days of receiving the request, the receiving Party subject to such obligation shall inform the third party of the request and that the third party may seek a protective order or other relief from this Court. If neither the third party nor the receiving Party seeks a protective order or other relief from this Court within 21 days of that notice, the receiving Party shall produce the information responsive to the discovery request but may affix the appropriate controlling designation.

11. Recipients of Confidential Discovery Material under this Protective Order may use such material solely for the prosecution and defense of this action and any appeals thereto, and specifically (and by way of example and not limitations) may not use Confidential Discovery Material for any business, commercial, or competitive purpose. Nothing contained in this Protective Order, however, will affect or restrict the rights of any person with respect to its own documents or information produced in this action. Nor does anything contained in this Protective Order limit or restrict the rights of any person to use or disclose information or material obtained independently from and not through or pursuant to the Federal Rules of Civil Procedure.

12. Nothing in this Protective Order will prevent any person subject to it from producing any Confidential Discovery Material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided, however, that such person receiving a request, will provide written notice to the producing person before disclosure and as soon as reasonably possible, and, if permitted by the time allowed under the request, at least 10 days before any disclosure. Upon receiving such notice, the producing person will have the right to oppose compliance with the subpoena, other compulsory process, or other legal notice if the producing person deems it appropriate to do so.

13. All persons seeking to file redacted documents or documents under seal with the Court shall follow Rule 2(H) of this Court's Individual Practices in Civil Cases. No person may file with the Court redacted documents or documents under seal without first seeking leave to file such papers. All persons producing Confidential Discovery Material are deemed to be on notice that the Second Circuit puts limitations on the documents or information that may be filed in redacted form or under seal and that the Court retains discretion not to afford confidential treatment to any Confidential Discovery Material submitted to the Court or presented in connection with any motion, application or proceeding that may result in an order and/or decision by the Court unless it is able to make the specific findings required by law in order to retain the confidential nature of such material. Notwithstanding its designation, there is no presumption that Confidential Discovery Material will be filed with the Court under seal. The Parties will use their best efforts to minimize such sealing.

14. All persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial or supporting or refuting any motion for summary judgment, even if such material has previously been sealed or designated as Confidential.

15. Any Party filing a motion or any other papers with the Court under seal shall also publicly file a redacted copy of the same, via the Court's Electronic Case Filing system, that redacts only the Confidential Discovery Material itself, and not text that in no material way reveals the Confidential Discovery Material.

16. Each person who has access to Discovery Material that has been designated as Confidential shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

17. Any Personally Identifying Information ("PII") (e.g., social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the persons who receive such information and are bound by this Protective Order in a manner that is secure and confidential. In the event that the person receiving PII experiences a data breach, she, he, or it shall immediately notify the producing person of the same and cooperate with the producing person to address and remedy the breach. Nothing herein shall preclude the producing person from asserting legal claims or constitute a waiver of legal rights or defenses in the event of litigation arising out of the receiving person's failure to appropriately protect PII from unauthorized disclosure.

18. This Protective Order shall survive the termination of the litigation. Within 30 days of the final disposition of this action, all Discovery Material designated as "Confidential," and all copies thereof, shall be promptly returned to the producing person, or, upon permission of the producing person, destroyed.

19. All persons subject to this Protective Order acknowledge that willful violation of this Protective Order could subject them to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

## II. ADDITIONAL TERMS FOR PROTECTED HEALTH INFORMATION

1. Given the nature of this litigation, there is a strong likelihood that Discovery Material, designated as Confidential or otherwise, may contain Protected Health Information ("PHI").

2. For the purpose of this Protective Order, PHI shall have the same scope and definition as set forth in 45 C.F.R. § 160.103. Without limiting the generality of the foregoing, PHI refers to individually identifiable health information, including demographic information collected from an individual, that: (1) is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) relates to the past, present or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present or future payment for the provision of health care to an individual, and (i) that identifies the individual, or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual.

3. This Order is not an authorization to obtain records. All parties must fully comply with all applicable discovery rules, statutes, and precedents. Upon such compliance, all "covered entities" (as defined by 45 C.F.R. § 160.103) are hereby authorized to disclose PHI to the attorneys for the Parties now of record in this litigation or who may become of record in the future in this litigation.

4. In accordance with and as defined by the HIPAA Rules, specifically 45 C.F.R. § 164.512(e)(l)(ii)(B) and (v), 42 C.F.R. Part 2 and related state laws, all Parties to this litigation are:

(a) prohibited from using or disclosing PHI, as defined by the HIPAA Rules, specifically 45 C.F.R. § 164.500 et seq., 42 C.F.R. Part 2, or applicable state laws and regulations governing patient privacy and protecting healthcare information, for any purpose other than the prosecution and defense of the litigation;

(b) required to securely destroy all copies of PHI or to return them to the disclosing entity within 30 days of the conclusion of the litigation; and

(c) permitted to submit pleadings, discovery, or other documents which include or reference PHI, subject to the terms of this Protective Order.

5. Based upon this Protective Order and commencing immediately from the date of this Protective Order, all persons, including but not limited to physicians and other medical providers, (i) shall comply with any and all subpoenas for records with or without deposition pursuant to applicable law and rules of procedure to which no objection has been timely filed, as well as other subpoenas served upon them at any future time in the course of this litigation; and (ii) are authorized and ordered to use or disclose PHI in response to said subpoenas, if such use or disclosure is necessary to comply with such subpoenas.

6. Additionally, pursuant to 45 C.F.R. § 164.512(e)(1)(i) and for purposes of compliance with the HIPAA Rules, 42 C.F.R. Part 2 and related state laws, and without waiver of any right to the prepayment of costs or any other appropriate objection or privilege that may be timely asserted, the attorneys, employees, agents, or designees of each Party or each Party's legal counsel in the litigation, and all duly noticed persons, are expressly and specifically AUTHORIZED and ORDERED to:

(a) respond to valid discovery requests served pursuant to the Federal Rules of Civil Procedure;

(b) respond to valid and timely Requests for Copies or Requests for Production from Non-Parties served pursuant to the applicable Federal Rules of Civil Procedure in the litigation for production of documents and things without deposition concerning PHI;

(c) respond to each of a Party's own experts who request, either orally or in writing, PHI necessary for the purposes of reviewing the litigation in whole or in part, regardless of whether the expert is a consulting or testifying expert, by disclosing and providing such requested PHI; and

(d) disclose to the Court PHI as may be necessary for the conduct of the litigation consistent with the terms of this Order.

7. Any PHI exchanged in discovery shall be maintained by the persons who receive such information and are bound by this Protective Order in a manner that is secure and confidential. In the event that the person receiving PHI experiences a data breach, she, he, or it shall immediately notify the producing person of the same and cooperate with the producing person to address and remedy the breach. Nothing herein shall preclude the producing person from asserting legal claims

or constitute a waiver of legal rights or defenses in the event of litigation arising out of the receiving person's failure to appropriately protect PHI or from unauthorized disclosure.

8. Each person who has access to Discovery Material, the content of which includes PHI, shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material.

## III. ADDITIONAL TERMS FOR PRIVILEGE AND/OR WORK-PRODUCT CLAIMS

1. The Parties recognize that some Documents may be redacted or withheld on the grounds of attorney-client privilege, work-product doctrine, or other applicable privilege or immunity from disclosure (collectively, "privilege"), including any legal holds issued during the course of this litigation. For each responsive Document withheld or redacted because of privilege by a Party, the producing Party's privilege/redaction logs shall include the following information to the extent it is reasonably available:

(a) Custodian or source: states the name of the person(s) or non-custodial source from which the document was collected;

(b) Date of the Document, or if no date appears, the date(s) on which it was prepared, sent, or received;

(c) Author(s) (if available);

(d) For Documents produced, but redacted on the ground of privilege, the starting and end Bates number;

(e) Recipient(s), CC(s), BCC(s) (for e-mail communications such as letters and internal memoranda);

(f) General description of the nature and subject matter of the Document;

(g) Specification of the privilege claimed;

(h) The basis for the privilege claim.

2. When the document is an e-mail thread containing one or more separate e-mail messages, it shall be logged as one entry, and the Date, Author and Recipient(s), CC(s) and BCC(s) fields on the log can be populated from the top line e-mail message as long as the Party withholding documents adequately describes the basis of the privilege claim. Each document within a family for which a Party claims a privilege shall be separately logged or otherwise accounted for. A Party need not include on its privilege log any attorney client or work product privileged communication that was sent and received only between counsel and client(s). If any disputes arise concerning any privilege log, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

3. The inadvertent production of any document or other information subject to protection by the attorney-client or other applicable privilege and/or the work product doctrine, or by another legal principle protecting such information and/or documents from discovery, shall not constitute a waiver of that privilege or protection (whether applicable to the document or other information that was inadvertently produced, or any other document or information), provided that the producing Party notifies the receiving Party in writing of the inadvertent production within 10 business days after the producing Party discovers the inadvertent production.

4. If a receiving Party is in receipt of a document from a producing Party that the receiving Party has reason to believe was inadvertently produced and contains information that the receiving Party believes may be subject to protection by the attorney-client or other applicable privilege and/or the work product doctrine or by another legal principle protecting such document from discovery, then the receiving Party shall notify the producing Party of the production of that document so that the producing Party may make a determination of whether such document was inadvertently produced.

5. Within 10 business days of learning of an inadvertent production, a producing Party may provide notice to a receiving Party that a document was inadvertently produced and is subject to an evidentiary privilege or otherwise protected from discovery, and may demand the receiving Party return or destroy the document within a reasonable time.

6. The Party returning or destroying any inadvertently produced document(s) may move for an order compelling production of some or all of such documents, but the fact that the documents were produced inadvertently shall not be deemed to be a waiver of any privilege or protection and shall not be a basis for compelling production. In addition, any motion to compel production of the documents that were inadvertently produced but then returned or destroyed as required by this Order shall not describe the specific contents of the inadvertently produced documents in a way that would diminish or destroy the privilege or protection that the producing Party claims applies to the document.

## IV. ADDITIONAL TERMS REGARDING ESI

1. This Order will streamline Document and ESI (defined below) discovery to best carry out any governing discovery requirements.

2. Plaintiff Edward Hayes, Defendant Cayuga Home For Children, Inc., and Defendant Andy Lopez-Willaims (collectively, the "ESI Parties") shall take all reasonable steps to comply with the protocols set forth herein and all productions shall be performed in compliance with this protocol.

3. Except as specifically limited herein, this Order governs the production and inspection of discoverable Documents and ESI by the ESI Parties during the action. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor Order.

4. This Order shall not enlarge or affect the proper scope of discovery in this action,

nor imply that discovery produced under the terms of this Order is properly discoverable, relevant, or admissible in this or in any other litigation. This Order does not alter or expand the preservation obligations of the ESI Parties. And nothing in this Order shall be interpreted to require disclosure of materials that are not discoverable or are protected from disclosure by applicable law or rule, the attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable and valid.

5. The ESI Parties agree to abide by the terms of this Order in good faith and they agree to promptly alert all other ESI Parties concerning any technical problems associated with complying with this Order. To the extent compliance with this Order imposes an undue burden, the ESI Parties shall promptly confer in an effort to resolve the issue or issues.

6. Consistent with their obligations under the Local Rules and the Federal Rules of Civil Procedure, the ESI Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing any motion with the Court, or otherwise seeking similar relief. If the ESI Parties are unable to resolve the dispute after a good faith effort, the ESI Parties may seek Court intervention in accordance with the Court's procedures.

7. The ESI Parties agree to the following definitions.

(a) "Documen**t**" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure. The term "Document" shall include Electronic Documents and ESI as defined herein.

(b) "Electronic Document or Data" means Documents or Data existing in electronic form including but not limited to: e-mail or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF).

(c) "Electronically Stored Information" or "ESI," as used herein, has the same meaning as in the Federal Rules of Civil Procedure.

(d) "Native File" or "Native Format" means and refers to ESI in the electronic format in which it was generated and/or as used by the producing Party in the usual course of its business and in its regularly conducted activities.

(e) "Metadata" means: (i) information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

(f) "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

(g) "Optical Character Recognition" or "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

(h) "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

(i) "Confidentiality Designation" means the legend affixed to Documents and ESI or provided in the "Confidentiality" metadata field for Confidential or Attorney Eyes Only documents subject to the terms of this Order as it relates to Confidentiality and Attorney Eyes Only Productions.

(j) "Searchable Text" means the native text extracted from an Electronic Document or any Optical Character Recognition text ("OCR text") generated from a Static Image.

(k) "Load File" means a Native File that is formatted to facilitate the loading of such information into a receiving Party's document review platform, including all of its Metadata, and the correlation of such data in the platform. No Metadata shall be deleted or modified in the Load File and the Load File shall contain all of the information pertaining to the Native File.

(l) "Unitization" means a set of electronically processed files and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

(m) "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems, e.g., a Portable Document Format (PDF).

8. The ESI Parties agree to following terms regarding data sources and culling of ESI.

(a) Custodians. Each Party is respectively responsible for identifying to a requesting Party the custodians within their organizations who are likely to have responsive Documents and/or ESI based on the requests for production already served. Each Party, upon the request of any other Party, shall disclose the identity of each of its custodians to the other Party. Subject to the ESI Parties' objections and responses to requests for production of Documents and ESI and subject to the Confidentiality provisions of this Order, the ESI Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the files of the identified custodians. Either Party may move the Court to seek collection of documents and ESI from additional custodians for good cause shown. For such motions, the movant will bear the

burden of showing good cause. The identification of a custodian is not an acknowledgment by the ESI Parties that such individuals, in fact, maintain relevant and responsive information or that they are otherwise a relevant fact witness.

(b) Types of Responsive ESI. Types of ESI subject to this Protocol may include, but are not limited to, emails and attachments, word processing documents, spreadsheets, graphics and presentation documents, images and text files, text messages, app-based instant messages, and internet based direct messaging, among potentially others.

(c) Location of Relevant ESI. The ESI Parties agree to search any reasonably accessible data sources that may reasonably contain ESI responsive to the document demands served in this action. However, no ESI Party may rely solely on use of search terms and custodians to identify discoverable information to the extent any other information, regardless of whether it contains a search term or by whom it is held, is reasonably known to exist or reasonably suspected by an ESI Party to exist and is responsive to another ESI Party's request.

(d) Non-Custodial Sources. Each ESI Party is respectively responsible for identifying all reasonably accessible-non-custodial sources—such as archives, department files, shared drives, hard drives, electronic databases, or document management systems (such as eRooms, SharePoint, or Documentum)—that will be reasonably searched to identify potentially responsive or relevant Documents or ESI. Subject to the ESI Parties' objections and responses to requests for production of Documents and ESI, and subject to the Confidentiality provisions of this Order, the ESI Parties shall begin producing responsive, non-privileged Documents and ESI, on a rolling basis, from the identified non-custodial sources.

(e) Search Queries and Methodologies. Each ESI Party is respectively responsible for performing searches and developing appropriate methodologies to find relevant documents and ESI. Upon request of any ESI Party, the ESI Parties shall disclose the custodians and/or data sources collected from, and the search terms used for the collection that has already taken place. If initial searches have not been performed, then the ESI Party shall disclose the search terms used (if any) before the initial collection of documents and ESI from the various custodial and non-custodial sources. The ESI Parties agree to meet and confer over whether additional search queries or additional custodial or non-custodial collections are appropriate and, in the event of an impasse, either ESI Party may move the Court to seek additional collection of documents and ESI, and/or run additional search queries for good cause shown.

(f) System Files. The ESI Parties may exclude certain files and folders that are reasonably identified as system files and not likely to contain user-created files.

(g) Global De-Duplication. An ESI Party is only required to produce a single copy of a responsive Document, and an ESI Party shall make reasonable efforts to de-duplicate responsive Documents and ESI (based on MD5 or SHA-1 Hash Values at the document level) across custodians. For e-mail messages with attachments, the Hash Value shall be generated based on the parent-child document grouping, and only e-mail messages in which the parent document and all attachments are exactly the same will be considered duplicates. However, Metadata identifying all custodians in possession of each document that is removed as a

duplicate must be produced, where available, in the "CUSTODIAN" field in the production Load File.

9. The ESI Parties acknowledge that they have a continuing obligation to take reasonable and proportional steps to preserve discoverable information in the ESI Party's possession, custody or control.

10. The ESI Parties shall, to the extent reasonably and technically possible, produce Documents according to the following specifications:

(a) Non-Redacted Electronically Stored Information Not Produced in Native Form. Non-redacted ESI should be produced by ESI Parties in a form no less "searchable" than it is maintained in the normal course of the producing ESI Party's business. ESI produced by the ESI Parties will be produced in single-page, 300 DPI, Group IV TIFF image file format (if an original ESI includes color-containing pages, such ESI, if reasonably possible, should be produced in single-page, 300 DPI, 24-bit color JPEG image file format) together with Load Files (OPT files) (depending on the preference of the requesting Party). Non-redacted ESI shall be produced by ESI Parties with searchable extracted text of the entire Document (at the document level in a .TXT file). The .TXT file shall be named to match the endorsed nine-number Bates number) assigned to the image of the first page of the document. If documents, such as electronic mail, are produced, the relationship between related documents (*e.g.*, e-mail attachments) shall be preserved. All Electronic Documents attached to an e-mail message are produced contemporaneously and sequentially immediately after the parent e-mail message by ESI Parties. The ESI Parties may request the production of Documents or ESI in Native Format by Bates number in the event that a Document or ESI produced in TIFF form is illegible.

(b) ESI to be Produced in Native Form. In the event that production of an original ESI as a TIFF or JPEG image would be technically impracticable due to limitations imposed by the file format or the integrity of the file, and/or due to other technical reasons pertaining to the conversion or processing of the native content, such ESI should be produced by the ESI Parties in Native Format. Files produced in Native Format shall be named by the ESI Parties either with a sequential Bates number followed by the file name or with a sequential Bates number followed by the Confidentiality Designation, if applicable, and the file name. A placeholder TIFF with the original file name, the language "Document Produced in Native Format" (or similar language), and stamped with assigned Bates number and confidentiality designation shall be included for each Native File produced. To the extent Native Files, including electronic spreadsheets or presentations, are redacted, production by the ESI Parties shall be made in TIFF format in accordance with the section on redacted document and not in Native Format.

(c) Redacted Documents. The ESI Parties may redact Documents or ESI on the following bases: personal information (*e.g.*, social security numbers, personal cell phone numbers, bank accounts, etc.), attorney-client privilege, attorney work-product privilege, and for GDPR-related privacy information. If the receiving ESI Party finds a document to be incomprehensible or unintelligible because of a redaction, the ESI Parties will meet and confer to try in good faith to resolve the dispute. For redacted electronic files, the ESI Parties agree to do so in the form of Static Image(s) in order to permit the redaction of any privileged portion

of such communications. The remainder of each such document must be provided in text-searchable PDF. All Electronic Documents attached to an e-mail message are to be produced contemporaneously and sequentially immediately after the parent e-mail message. The Metadata fields for a redacted Document or ESI will include BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, TEXT (which shall contain the OCR or Optical Character Recognition text so as not to reveal redacted text), DATE, TO, FROM, BCC and CC fields. To the extent Documents or ESI have been de-duplicated, the CUSTODIAN field shall list all custodians that had possession of the Document.

11. Load files will include the following metadata:

| **Fields for ESI docs** | **To Be Used By** | **Description** |
|---|---|---|
| BEGBATES | All Parties | Beginning bates number of document |
| ENDBATES | All Parties | Ending bates number of document |
| BEGATTACH | All Parties | Beginning bates number of attachment document. |
| ENDATTACH | All Parties | Ending bates number of last attachment |
| FROM | All Parties | Name of person sending an email |
| TO | All Parties | Names of persons to whom an email is sent |
| BCC | All Parties | Names of persons blind copied on an email |
| CC | All Parties | Names of persons copied on an email |
| SUBJECT | All Parties | Subject line of an email |
| AUTHORS | All Parties | Name of person creating document (if available) |
| DATECREATED | All Parties | Date document was created (mm/dd/yyyy) |
| DATEMODIFIED | All Parties | Date document was last saved (mm/dd/yyyy) |
| TIMECREATED | All Parties | Time document was created (HH:MM AM/PM) |
| TIMEMODIFIED | All Parties | Time document was last saved (HH:MM AM/PM) |
| CUSTODIAN | All Parties | Name of person from whom the file was obtained; if not person, then department |

| | | |
|---|---|---|
| DATERECEIVED | All Parties | Date email was received (mm/dd/yyyy) |
| DATESENT | All Parties | Date email was sent (mm/dd/yyyy) |
| DOCEXT | All Parties | Extension of native document |
| DOCLINK | All Parties | Full relative path to the current location of the native or near-native document used to link to native produced file |
| FILENAME | All Parties | Name of the original Native File as it existed at the time of collection |
| FOLDER STRUCTURE | All Parties | Location within folder structure, including any container files, for the original Native File as it existed at the time of collection |
| DEDUPLICATION | All Parties | Identifying value (MD5 or SHA-1) of an electronic record, used for deduplication and authentication |
| FILETYPE | All Parties | Indicates file type; e.g., email, Microsoft Excel, Microsoft Word, Portable Document Format |
| TIMERECEIVED | All Parties | Time email was received in user's mailbox (HH:MM AM/PM) |
| TIMESENT | All Parties | Time email was sent (HH:MM AM/PM) |
| DUPCUSTODIAN | All Parties | Custodian names for duplicate files |
| DUPEFILELOCATIO N | All Parties | Path to original location of files eliminated as duplicates |
| Redaction | All Parties | Whether the document contains any redactions ("Y" or "N") |
| FullTextPath | All Parties | The path of the full text files for each document |
| Source | All Parties | Name of producing Party |
| Originating Time Zone | All Parties | Time zone in which document originated |

| | | |
|---|---|---|
| Document Title | | The original document title, if any (non-email documents). |

12. The above list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the document.

13. The ESI Parties acknowledge there can be differences between the date/time values provided by the operating system (e.g., DATE CREATED or DATE MODIFIED) and by the application (e.g., DATE LAST SAVED) and agree that the producing ESI Party has no obligation to try and reconcile the differences, if any. The standard load file formats with standard fields and values delimiting characters must be used for the generation of the production output (Concordance DAT for the metadata and native and/or textual content, and Opticon OPT for the imaged pages data).

14. Non-Custodial Documents. For documents and ESI from non-custodial sources, the ESI Parties shall cooperate to produce responsive Documents and ESI in a reasonably useable production format.

15. Searchable Text. The ESI Parties agree that they will produce Searchable Text for all Electronic Documents and Electronic Data produced, where technically possible. For all non-redacted ESI, the searchable text will be extracted directly from the Native File. In cases where there is no original text suitable for extraction, the imaged ESI must undergo OCR processing. For any document where text has been redacted, Searchable Text will be provided for the non-redacted text by the ESI Parties, if possible.

16. Bates Numbering. Each page of a produced image, regardless of whether it is produced by an ESI Party or a non-ESI party shall have a unique Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source Document. Each TIFF or JPEG image or Native File (or for Non-ESI Parties, each page of the PDF) shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

17. Production Media. Documents, regardless of whether they are produced by a Party or a non-Party, shall be produced on USB hard drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. The Production Media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.

18. Replacements. All files that are replaced for any reason must be annotated with an "R" designation appended to the Bates prefix. A cross-reference file will be provided identifying the document's original Bates and its replacement Bates number.

19. Modifications. Any practice or procedure set forth herein may be varied by agreement of the parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents or ESI.

## V. ADDITIONAL MISCELLANEOUS TERMS

1. Good Faith. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Protective Order. If a producing Party cannot comply with any material aspect of this Protective Order, such Party shall inform the requesting Party in writing at or before the time of production as to why compliance with the Protective Order was unreasonable or not possible. No Party may seek relief from the Court concerning compliance with the Protective Order unless it has first conferred with other affected Parties to this litigation.

2. No Effect on Discovery or Admissibility. This Protective Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Protective Order shall be construed to affect the admissibility of any document or any data. All objections to the admissibility of any document or any data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

3. Subsequent Appearances. Any Party who appears following the entry of this Protective Order or who otherwise wishes to join in this Protective Order after its entry may file with the Court a "Notice of Agreement to be Bound by Stipulation Regarding Confidentiality and Production of Documents and Electronically Stored Information." Upon such a filing, the Party shall be deemed to be bound by this Protective Order as if it were an original movant without further action by the Court.

SO STIPUATED AND AGREED.

/s/ *Christina T. Hassel*
Dated: July 21, 2026

*One of the Attorneys for Plaintiff/ Counter-defendant Edward Hayes*

/s/ *Cassie T. Doran*
Dated: July 21, 2026

*One of the Attorneys for Defendant/ Counterclaimant Cayuga Home for Children, Inc. and Defendant Andy Lopez-Williams*

/s/ *Nicole M. Marlow-Jones*
Dated: July 21, 2026

*One of the Attorneys for Defendants Elaine Buffington, Buffington & Hoatland CPAs PLLC, and Dannible & McKee, LLP*

SO ORDERED.

Dated: July 21, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EDWARD HAYES,<br><br>Plaintiff,<br><br>v.<br><br>CAYUGA HOME FOR CHILDREN, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:25-cv-9333-LJL<br><br><br>**<u>NON-DISCLOSURE AGREEMENT</u>** |

LEWIS J. LIMAN, United States District Judge:

I, ______________________________, acknowledge that I have read and understand the Protective Order in this action governing the non-disclosure of those portions of Discovery Material that have been designated as Confidential. I agree that I will not disclose such Confidential Discovery Material to anyone other than for purposes of this litigation and that at the conclusion of the litigation I will either return all discovery information to the party or attorney from whom I received it, or upon permission of the producing party, destroy such discovery information. By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

______________________________ ______________________________

Dated: